June 1822.

Coxs
vs
Scott

COURT OF APPEALS, JUNE TERM 1822.

Cox's Ex'rs vs. Scott.

A writ of ne exeat cannot be granted for a debt founded on a promissory note not due. It can only issue where the demand is an equitable one. The form of a bond to be executed by the defendant on a writ of ne exeat being served on him, set out.

APPEAL from a decree of the court of chancery. The facts stated in the bill which was filed on the 21st of November 1816, are, that Cox, the defendant in the court below, (whose executors are now the appellants,) being indebted to the complainants (one of whom is the surviving appellee,) in the sum of $1599 30, gave them his negotiable promissory note, dated the 23d of April 1816, payable in nine months after date. The note was not due until the 26th of January, after the filing of the bill. That Cox was about to remove himself, and all his goods, property and merchandize, into the western parts of the United States, and without paying said debt to the complainants, or giving them any security or satisfaction for the payment thereof: That as the promissory note, and the sum of money therein mentioned, was not due, the complainants could not institute a suit at law for its recovery; and for as much as they would be without remedy in the premises, and if Cox was to leave this state, would be in danger of losing their said debt, they prayed that he be decreed to pay, or secure to be paid, to them, the said sum of money; and be prohibited from leaving or departing from this state without the further order of this court; and for such other and further relief in the premises, as the nature and justice of their case might require, &c. Prayer for a subpena, and the state's writ of ne exeat, &c. Writs of subpena and ne exeat accordingly issued. At the return day of the writs the sheriff, to whom they were directed, returned that he had served them, and that he had taken a bond from Cox, with surety to the state in the penal sum of $3200, conditioned, "that if the said James Cox, junior, does not go, or attempt to go out of the state of Maryland, without leave of the said high court of chancery, then the above obligation to be void, otherwise to remain in full force and virtue." Cox answered the bill, admitting that he was indebted to the complainants in the sum mentioned on his promissory note, as stated by them. He denied that he was about to remove himself and all his goods, &c. into the western parts of the U. S. but that being a merchant, extensively engaged in business, and having a large stock of dry goods on hand, &c. he had, with the knowledge

and consent of all his principal creditors, except the complainants, intended to take a part of said stock to *Pittsburgh* for the purpose of disposing of them, and to make collections of debts due him there, and afterwards to return as speedily as possible to *Baltimore*, and had no design whatever of permanently removing, &c. That he had executed a bond, with security, securing the complainants full and complete remedy at law, which he had offered to them, &c. *Prayer*, that the writ of *ne exeat* might be discharged, &c. and petitioned that he might be permitted to depart the state on his lawful and necessary business, &c.

KILTY, Chancellor, (November 29th, 1816.) I have considered the within petition, and the answer and other papers therein referred to. I am opinion, that no temporary leave could be given, but that the writ of *ne exeat* must be discharged entirely, or remain in force. But no circumstances of hardship that could be stated would entitle the petitioner to a decision without giving the other party an opportunity of being heard. Without expressing any positive opinion, I am inclined to think, that if the petition could now be heard, the bond offered would not be sufficient; but that a bond to perform the decree would be required. It is therefore ordered, that the petition be heard on Wednesday the 2d day of December term next; provided a copy of this order be served on either of the complainants, or their counsel, before the 2d of December next. On the 2d of December the chancellor passed the following order: "On hearing the parties on the above petition I am of opinion, that it cannot be complied with, but the *ne exeat* may be dissolved on a bond according to the rule contained in the book of orders." The defendant afterwards executed such a bond to the state, in the penal sum of $3200, and conditioned, "that if the said *James Cox, junior*, shall either obey, fulfil and perform, the decree which may be made by the chancellor in the said cause, or render his body to the custody of the sheriff, to whom any writ of attachment or *capias ad satisfaciendum* shall be directed, for the purpose of compelling a performance of the said decree by the said defendant, then," &c. The chancellor then ordered the *ne exeat* to be dissolved.

JUNE 1822.

Cox
vs
Scott

JUNE 1822.   KILTY, Chancellor, (February term 1817.) This suit
being set down for final hearing on bill and answer, was
Cox            argued by the counsel on each side.   On behalf of the de-
vs             fendant a number of authorities were cited as to the juris-
Scott          diction and practice of the court; to the benefit of which, as
far as they are applicable, his client is entitled; but there
are no merits in his case.   He applied to have the *ne exeat*
dissolved, and it was dissolved according to the rule of the
court; on his giving a bond to obey the decree, or render
himself to custody on a *ca. sa.*   The present defence goes
to render the bond nugatory, although the answer admitted
the money to be due.   The only doubt that I have is as to
the kind of decree now to be made.   It is not the practice
of the chancellor alone to assess interest by way of damages,
and therefore it appears proper to have an interlocutory
decree to account.   But if the complainants should desire
it, the decree will be rescinded, and the cause stand for
further hearing at the next term.   *Decreed*, that the
parties account with each other, and that an account
be taken by the auditor, &c.   The auditor accordingly
stated an account—that there was due from the defen-
dant to the complainants the sum of $1634 11, with
interest on $1599 30 from the 29th of May 1817, until
paid.

KILTY, Chancellor, (July term 1817.)   The counsel for
the complainants moved for a confirmation of the auditor's
report, and a decree for payment.   The counsel for the
defendant was heard against it, and the case was sub-
mitted.   I see no reason to alter the opinion expressed in
the interlocutory decree at February term.   *Decreed*, that
the account reported by the auditor be confirmed, and
that the defendant do forthwith pay to the complainants,
or bring into this court to be paid to them, the sum of
$1634 11, with interest on $1599 30, part thereof, from
the 29th of May 1817, until paid or brought in, and the
costs of this suit.   From which decree the defendant ap-
pealed to this court.   Pending the appeal, he died, and his
executors were made parties.   The death of one of the
appellees was suggested.

The cause was argued at December term 1819, before
CHASE, Ch. J. BUCHANAN, JOHNSON, MARTIN, and DOR-
SEY, J.

*Scott*, for the appellants, contended, 1. The proper remedy for the complainants for the recovery of their debt, was an action at law on the note, and the court of chancery had not jurisdiction in the case; if that court had not originally jurisdiction, no act of the parties could give it, and every thing must be considered as *coram non judice.*

2. Even if the court of chancery would have had jurisdiction, on the complainant's showing that they had been deprived of their remedy at law by the act of the defendant, yet there was no such testimony, and the answer denied the allegation of an intended removal.

On the *first point* he contended, that the writ of *ne. exeat* was a high prerogative writ, and was issued by the King for political purposes, to restrain the subject from leaving the country. *Fitz. N. B.* 85, (192.) *Cooper's Plead. Introd.* XXXIV. It was afterwards extended for the benefit of the subject, but was never issued on a *mere* legal demand, but only in the case of an equitable one. *Anon.* 2 *Atk.* 210. *Read vs. Read,* 1 *Chan. Ca.* 115. *Roberts vs. Wilkie, Amb.* 177. *King vs. Smith,* 1 *Dick. Rep.* 82. *Atkinson vs. Bedal, Ibid* 98. *Exparte Duncombe, Ibid* 503. *Taylor vs. Leitch, Ibid* 380. *Exparte Bunker,* 3 *P. Wms.* 313. *Goodwin vs. Clarke,* 2 *Dickens' Rep.* 497, (& note.) *Crossley vs. Marriott, Ibid* 609. *Brocker vs. Hamilton,* 1 *Dickens' Rep.* 154. 2 *Madd. Chan.* 181, 182, per Lord Chan. *Eldon. Cooper's Plead.* 13, 149. *Seymour vs. Hazard,* 1 *Johns. Chan. Rep.* 1. *Cook vs. Ravie,* 6 *Ves.* 283. It had sometimes been granted in the nature of bail. *Cooper's Plead. Introd.* XXXIV, and page 13. 2 *Mad. Chan.* 182. So also when applied for by sureties, as in *Hall vs. Bosley,* by Chan. *Rogers;* and *Wilson & Hoffman vs. Mandhart,* by Chan. *Hanson.* Also by Chan. *Hanson* in the case of partners.

On the *second point* he stated, that if the writ of *ne exeat* had issued properly, there was no subject matter on which the chancellor could decree, as the proper remedy was at law. He cited 1 *Madd. Chan.* 21, 69. *Anon.* 2 *Atk.* 210.

*Moale,* for the appellee. The question for decision is, hath the court of chancery jurisdiction over the matter contained in the proceedings in this case? If the subject matter is cognizable in equity, then the decree is correct, and is in conformity with the justice of the case, as dis-

Cox
vs
Scott

closed by the proceedings. It appears that an interlocutory decree passed to account, with liberty to the complainants and defendant to produce testimony. An account was taken. This account, and the amount thereof, form the basis of the final decree. The subject matter of the claim may be fairly considered as matter of account; and if so, a court of equity hath competent jurisdiction: 1. In the case of an admitted balance of account, the court has jurisdiction. An admitted balance of account does not differ from a note. Between drawer and payee, the consideration may be inquired into by the drawer, and so into an admitted balance of account. It does not appear but that there were mutual dealings between the parties, and that the note was taken for the balance of account. If the note was for such balance, the court hath original jurisdiction, as in *Jones vs. Sampson*, 8 *Ves.* 593, where the writ of *ne exeat* was sustained on an admitted balance of account, (upon which bail might have been had,) on the ground that either party might apply to a court of equity and have an account. It was incumbent on the defendant below to show that the claim in question was a *single demand*. He might have proved that *fact* before the auditor, when the account was taken. Mutual dealings, and a balance of account, may be fairly inferred.

2. The decree in this case may be sustained on the ground of fraud. The transaction, on the part of the appellant, originated in fraud. That fraudulent devices were used in obtaining the merchandise on a long credit, and giving the note payable at a distant day, are facts disclosed by the answer. If the fraud grew incidentally out of the whole transaction, it is sufficient to give the court jurisdiction.

3. This writ can be sustained in all cases where the party having *even* a money demand, cannot institute suit at law, and hold the debtor to bail. In such cases a court of chancery has jurisdiction, and can grant relief. The right to recover under the jurisdiction of that court, arises from the act of the debtor himself. His leaving the state with his property, of itself gives jurisdiction. The uniform decisions of the court of chancery of this state have recognized this principle; and in all cases of money demands, where the debtor could not be held to bail at law, the writ of *ne exeat* has been granted and sustained. This

was the case in *Zollickoffer vs. Bousquet*, and *Philpot vs.* JUNE 1822,
*Basey*, in the year 1784. *Hogan vs. M'Culloh*, and *Hall*
*vs. Ogden*, in 1786. *Hall vs. Bosley*, and *Wright vs. Clay-*
*land*, in 1788. *Owings vs. Ogden*, in 1795. In this last
case the basis of the prayer for the writ was, that *Owings*
had instituted an action of trespass *Q. C. F.* and had omit-
ted to file an affidavit to hold the defendant to bail, there
being a great and special damage, &c. *Montgomery vs.*
*Gilmor*, where the bond was not due, and *Smith vs Gordon*
in 1799. *Brown vs. Duncan*, by surety for notes not due,
in 1800. *Scott vs. Bulger*, where the note was not due,
and *Shipley vs Dougherty*, in 1801. *Lock & Cartwright*
*vs. Bond*, on the application of sureties in a guardian's bond,
and *Hoffman et. al. vs. Mandhart*, by sureties in custom
house bonds, in 1802. *Whittington vs. Freeland*, where
a *ca. sa.* had issued on a judgment, and was returned *non*
*est*, in 1804. These cases prove the practice of the court
of chancery in this state to be, that a writ of *ne exeat* may
issue, and be sustained, where the party has a *money de-*
*mand*, (although not a demand where a court of equity
would have cognizance, as having either original or con-
current jurisdiction,) and has no remedy at law, and can-
not hold the debtor to bail.

The late decisions in *England* show that the writ of *ne*
*exeat* can in no case be sustained but where the court of
chancery hath original or concurrent jurisdiction. But this
court will not be controled by those decisions further than
is consistent with the sound policy of the commercial inte-
rest of the country, and the rules of justice. Those cases
decide, that to sustain the writ, the demand must be *an*
*equitable demand, in the nature of a debt actually due*—a
debt due in conscience, and *where the party has no remedy*
*at law.* The first case of a writ of *ne exeat* is in *Lloyd vs.*
*Cardy, Pre. in Chan* 171, in the year 1701, where the plain-
tiff stated that he had paid the defendant more money than
was due on a bill referred to be taxed. On the affidavit of
the plaintiff, without a bill being filed, the writ was sus-
tained. The party here had remedy at law. He could
have maintained an action of *assumpsit* for the amount over
paid. In *Brunker exparte*, 3 *P. Wms.* 312, it was held
that the writ could not issue without a bill was filed; that
it could not issue *on a mere money demand for which the*
*defendant might have been holden to bail.* Hence, if the

Cox
vs
Scott

June 1822. party could not be held to bail, the writ could be sustained. That is, if the creditor cannot support his action at law, because the debt was not due, and therefore the party could not be held to bail, the court will interfere. This is the true distinction. There is no case reported where the party cannot be held to bail, that the court of chancery have refused the writ. In the *anonymous* case in 2 *Atk.* 210, there was a verdict and judgment at law, but the plaintiff could not have the benefit of his judgment immediately, and the defendant was about to leave the country. The writ was refused because the plaintiff might hold the party to bail in an action on the judgment. In *Pearne vs. Lisle, Amb.* 75, the writ was refused, because the plaintiff had his remedy at law. In *Done's* case, 1 *P. Wms.* 263, *(note,)* it was held, 1st. that a bill must be filed, and 2d. that the writ could not issue on a *mere legal demand,* for which the defendant might be held to bail. In *Rico. vs. Gualtier,* 3 *Atk.* 501, the bill stated a *fraud.* In *Atkinson vs. Leonard,* 3 *Bro. Ch. Ca.* 218, the bond was lost, and the writ was sustained, because the court had concurrent jurisdiction, although the demand was a legal one; that is, the obligor could have been held to bail. In *Parker vs. Appleton,* 3 *Bro. Ch. Ca.* 427, the affidavit stated two demands, the 1st. a liquidated claim, and the 2d. another account. The writ was marked for the former only. The plaintiff and defendant were partners in a joint adventure; the court had original jurisdiction; but still, on the liquidated claim, the party might have been held to bail. In *Cock vs. Ravie,* 6 *Ves.* 284, (which is one of the late *English* decisions, opposed to those of our own court of chancery,) the plaintiff had become the defendant's surety in *a bond* not due, and the defendant had promised to indemnify him. The writ was refused—the *demand* must be an *equitable demand,* in the nature of a debt actually due. This is not the case at bar. In the case of a bond not due, it is a legal demand, because the demand attaches immediately; the penalty admits the debt to be due, but by the condition avoids it. The case of a promissory note is not so, there no legal demand attaches until the note *is due.* In the above case, Lord *Thurlow* cites a case of a bill filed to make the principal in a bond pay the debt. The party was going to *America* on the 1st of June, and the bond would have been due on the 1st of July. The case was

Cox
vs
Scott

strong, yet the writ was refused. *Jackson vs. Petrie*, 10
*Ves.* 165, was a case of fraud, but only by inference. So
in the case before this court, fraud may be inferred.
In *Gardiner vs. ——*, 15 *Ves.* 444, the *ne exeat* was
applied for to restrain an attorney from going abroad; and
to abide the event of an action pending for the recovery
of the money mentioned in the bill. The writ was re-
fused; and it was said to be only granted on an equitable
demand. Here the suit was depending, and the party
being an attorney upon his privilege, could not be held to
bail. The party here had selected his remedy—He had
brought a suit and it was depending. In *Haffey vs. Haffey*,
14 *Ves.* 261, which was a case of alimony, an undoubted
case of original jurisdiction. But the Lord Chancellor
said "this writ hath been considered as in the nature of
equitable bail; and under circumstances that would not
entitle you to bail at law, you cannot have this writ here."
In *Jones vs. Alephsin*, 16 *Ves.* 470, the bill stated the de-
mand to be the balance of account. The court said, "it
is settled, that although the plaintiff's swearing to a ba-
lance of account, may have bail at law, yet this court
holding concurrent jurisdiction on the head of account,
the plaintiff may have the writ." In *Russell vs. Asby*, 5
*Ves.* 96, the plaintiff was the widow and executrix of a
testator, and being entitled under his will to £4000, em-
ployed an attorney to get it in, who recovered part of it,
£2712, which he paid over to the defendant, a stock trader,
to be invested in the funds. The defendant did not invest
it, but converted it to his own use, and to avoid payment
intended to leave the kingdom. In support of the motion
it was contended, that this was an equitable demand upon
which the plaintiff could not sue at law. The Lord
Chancellor expressed a doubt whether the writ could be
sustained, intimating that the defendant might have been
held to bail in an action at law. On motion to discharge
the writ it was contended that this was a *mere legal de-
mand*, upon which an action at law for money had and
received would lay; but the chancellor said the plaintiff
would have been *nonsuited* at law, and that the defendant
*should account* for the money according to the price the
stock bore when the money was put in his hands.

*Curia adv. vult.*

JUNE 1822.    THE COURT OF APPEALS at the present term *reversed*
⌣⌣⌣          the decree of the court of chancery.
Dashiell
vs
Attorney General

COURT OF APPEALS, JUNE TERM, 1822.

DASHIELL *et al.* *vs.* THE ATTORNEY GENERAL.

The peculiar
law of charities
originated in the
statute of charita-
ble uses of 43 *Eliz.
ch.* 4, and inde-
pendent of that
statute a court of
chancery cannot
sustain and en-
force a devise to
charitable uses,
which, if not to a
charity, would on
general principles
be void
. J. C. by his will
directs the income
of his estate to be
paid over by his
executors to cer-
tain trustees, and
after making se-
veral appropriati-
ons of a part there
of, further directs
the residue to be
equally divided,
one half to be ap-
plied towards find-
ing, &c. the poor
children belong-
ing to the congre-
gation of *St. Pe-
ter's* Protestant
Episcopal Church
&c.   *Held,* that
such bequest is
too vague and in
definite to be car-
ried into effect,
and is therefore
void, and that the
subject of the
trust results for
the benefit of the
next of kin of the
testator
A devise to trus-
tees for the benefit
of an indefinite
object is equally
as invalid as an
immediate devise
to such an object
The statute of
43 *Eliz. ch* 4, is
not in force in this
state
*Kilty's* Report
of *British* Statutes
—The authority it
is entitled to

APPEAL from *Baltimore* county court sitting as a court of equity. This was an information and bill of complaint filed in the name of the Attorney General, at and by the relation of the trustees of *Hillsborough* school in *Caroline* county, and of the vestry of *Saint Peter's* church in the city of *Baltimore*, and the trustees of *Saint Peter's* school in the said city, on the behalf of themselves and of *Peter Harman*, &c. poor children belonging to the congregation of *Saint Peter's* Protestant Episcopal Church in the city of *Baltimore*, and of the rest of the poor children belonging to the said congregation, against the Reverend *George Dashiell*, *George W. Dashiell* and *Mary* his wife, to establish certain charitable devises in favour of the relators and complainants, and to enforce the execution of a trust for that purpose in the will of *James Corrie*; dated the 12th of March 1805. The will referred to, after appointing *George* and *John Yates* executors, and the appellant, *George Dashiell*, and *Henry Downes*, trustees of the testator's estate, and guardians of his daughter and only child, and directing the mode in which his estate should be administered, and the proceeds (after payment of his debts,) invested in certain banks by his executors, and be by them paid over to his trustees, contains the following clauses—

"I will that my daughter *Mary* shall have a woman to nurse and attend her; and all the necessary expenses attending my daughter *Mary*, and the expenses of a woman to attend her until she attains the age of eighteen years, shall be paid out of the income of my estate, received by my trustees from my executors, and the residue of the income, after deducting my daughter *Mary*, and her servant's expenses, shall be appropriated, until she attains the above age of eighteen years, as follows: It shall be equally divided, one half to be applied towards *feeding, clothing and educating, the poor children belonging to the congregation of Saint Peter's protestant episcopal church in the city of Baltimore;* the other half to be applied *towards feeding,*