MARY JANE BAYLY
vs.　　　　　　　　MARCH TERM, 1847.
JOSIAH BAYLY.

[DIVORCE—WRIT OF NE EXEAT—CONSTRUCTION OF STATUTES.]

UPON a bill for a divorce *a mensa* and alimony, Baltimore County Court decided that the writ of *ne exeat* might be granted upon the affidavit of the wife alone, that her husband, the defendant, intended to leave the state, and depart beyond the jurisdiction of the court.

The power of the wife to make this affidavit was at one time denied, and there can be no doubt, that in the cases in which she is permitted to make it against her husband, her affidavit may be corroborated by the oaths of other persons, deposing to the acts and declarations of the husband manifesting his purpose to remove beyond the jurisdiction of the court.

A suit for a divorce commenced in Baltimore County Court, in virtue of the act of 1841, ch. 262, which conferred upon the Chancellor and the county courts, as courts of equity, jurisdiction over the subject of divorces, is within the terms of the act of 1824, ch. 196, which authorizes the removal of all equity suits then depending, or thereafter to be commenced, in any of the county courts of the sixth judicial district, to the Court of Chancery, notwithstanding no law existed, giving the courts of equity jurisdiction in cases of divorce, at the time the act of 1824 was passed.

It is well settled in England, that the Court of Chancery will not issue the writ of *ne exeat*, in cases of alimony, unless there has been a decree for alimony in the spiritual court ; nor will it be granted pending an appeal from such decree, by the husband, nor for alimony *pendente lite*, nor for any other sum than that actually due for alimony and cost ; but in New York the writ has been granted upon the petition of the wife *pendente lite*.

In this case, where the writ issued of *ne exeat* upon the naked, unsupported oath of the complainant, before a decree had passed establishing her right to alimony, and where such right was disputed by strong averments of the answer, and the allegation of an intention to remove from the state was positively denied by the defendant, the Chancellor granted a motion to discharge the writ, upon the case presented by the bill and answer.

[The bill was filed in the equity side of Baltimore County Court, on the 8th of May, 1847, by Mary Jane Bayly, of Baltimore city, the complainant, in which she states, that she was married to the defendant, Josiah Bayly, on the 15th of September, 1846 ; who then resided in Dorchester county, where she went to reside with her said husband ; but, that since that time, they have removed to the city of Baltimore.    That pros-

ecutrix always conducted herself as a faithful and obedient wife ; but she charges, that her husband, soon after her marriage, commenced, towards her, a course of excessively vicious conduct and cruel treatment, and has ever since, continued to ill treat and cruelly use her; that his conduct has been so violent, as to cause her to entertain serious fears for her personal safety. That in December last, she removed with her husband, to the city of Baltimore, and that since said removal, her husband has several times left and abandoned her, for several weeks at a time ; and has often told her he would altogether abandon her, and would not contribute to her maintenance, assigning no other reason, than that he could not support the thought of being bound to one person for life. She further complains, that her said husband, has now abandoned her altogether, and left her in an unprotected and destitute situation, wholly without the means for her support and maintenance, and is now wasting his pecuniary means, and leading a life of disgraceful debauchery. That he is possessed of property to the amount $15,000, and that he is about to leave the state of Maryland, and depart beyond the jurisdiction of this honorable court. The bill, then prays for a decree for a divorce *a mensa et thoro*, and granting her such alimony or annual support, out of the property of her husband, as may be just and proper, and for the writ of *ne exeat*, restraining the said Josiah Bayly, from going out of the jurisdiction of this court, and for general relief.

The complainant made oath to the truth of the matters charged in this bill, and on the same day on which it was filed, the writ of *ne exeat* was ordered to be issued by Baltimore County Court, directing the sheriff to detain the defendant in his custody, until he shall give a bond, with securities, to be approved by the sheriff, in a penalty of $5,000, conditioned to abide by, and conform to all decrees, which the court may pass in the cause.

The defendant was taken under this writ, and being in the custody of the sheriff, he made oath on the 13th of May, 1847, that he is now, and always has been, a resident of Dorchester county, in this state, and was so, at the time of the filing of this bill against him ; and that he has, and has had, no intention

of going beyond the limits of this state ; and on the same day, entered a motion, that he be discharged from said writ, upon the ground, that he was a resident of Dorchester county, and this court had no jurisdiction ; upon which motion, the following order was passed.

This motion being submitted, and evidence being heard, it is, thereupon, this 13th day of May, 1847, by Baltimore County Court, ordered, that the said motion be, and the same is, hereby overruled. The defendant was then delivered to custody of the warden of the jail of Baltimore city, and immediately, upon the same day, (13th of May, 1847,) filed his answer to the bill, with exceptions to its averments, as follows :

1st. That at the time of filing said bill, and service of the subpœna in this case, and of issuing and executing the writ of *ne exeat*, the defendant was a resident of Dorchester county, and still continues so to be ; he therefore insists, that this court has no jurisdiction in the premises, and, that the said writ should be quashed, and the bill dismissed.

2d. He furthers excepts to the sufficiency of the averments of the bill, in this, that the acts of vicious conduct and cruel treatment, of which said bill complains, are not specified, so that he can answer thereto, or be provided with proof to negative such averments.

Insisting upon these exceptions, the respondent, for answer, admits the marriage and residence in Dorchester county, as charged in the bill, but denies that he has ever removed to the city of Baltimore, and avers that he has no intention so to do, and that he is not about to leave the state of Maryland, or to depart beyond the jurisdiction of her courts, and that he has no such intention or purpose. He believes, and therefore charges, that the complainant has been guilty of conjugal infidelity to him, and does not admit the statement of the bill, that she has been a faithful wife. He denies the vicious conduct and cruel treatment charged in said bill, and that he has ever struck or cruelly used her. That complainant and respondent came to Baltimore about the 19th of December last, and there separated, because he disliked her, and believed her unworthy. That

she then took a house in said city against his wishes, and on her own responsibility, and respondent went to a hotel, and in a few days returned to Cambridge, and has since been repeatedly in Baltimore, on visits, as is usual with him, and at the time of the separation he gave her $650, and some small sum beyond. That it is not true that he is possessed of property to the amount of $15,000, but that he has lost, spent, given, and paid away nearly all that he had and inherited, and that he is not worth $500. That though the complainant cannot make good any cause of divorce against him, yet that respondent has no objection, whatever, to a divorce from her, provided it be a divorce *a vinculo matrimonii.*

On the 17th of May the cause was removed, upon the suggestion of the defendant, to the Court of Chancery, and on the 18th of the same month, he filed his petition for a discharge of the writ of *ne exeat,* and his release from custody, at the hearing of which, on the 1st of June, 1847, the following opinion was delivered :]

THE CHANCELLOR :

This case originated upon a bill filed on the equity side of Baltimore County Court, by the complainant, in which, upon the grounds therein set forth, she prays for a divorce *a mensa et thoro,* from her husband, the defendant, for alimony, and for the writ of *ne exeat,* to restrain the defendant from departing out of the jurisdiction of the court, until the further order of the court, and for such further and other relief as her case may require.

The bill is supposed to make a case entitling the complainant to relief, under the provisions of the 3d section of the act of 1841, ch. 262, which authorizes the Chancellor, and the county courts, as courts of equity, to decree divorces *a mensa et thoro,* for the causes therein specified, and also upon decreeing divorces, to award alimony to the wife.

Exceptions have been taken by the defendant to the sufficiency of the averments of the bill, but the Chancellor does not propose at this time, to consider or express any opinion in

29*

regard to those exceptions, reserving that question until the case shall be brought before him for decision upon its merits.

The bill was filed on the 8th of May, and on the same day, the Baltimore County Court passed an order directing the writ of *ne exeat* to issue, and that the sheriff should detain the defendant in his custody, until he shall give bond, with surety, to be approved by the sheriff, in the penalty of five thousand dollars, conditioned to abide by, conform to, and fulfil the requirements of all decrees which the court may pass in the cause. The prayer for the writ of *ne exeat* was founded upon the averment "that the said Josiah Bayley is about to leave the state of Maryland, and depart beyond the jurisdiction of this court."

On the 13th of May, Baltimore County Court overruled a motion to discharge the defendant from the writ, and to quash the same, upon the ground that the defendant is, and was a resident and inhabitant of Dorchester county, in this state, it appearing by the order, that evidence was heard by the court upon the question submitted to it upon this motion, and on the same day, as appears by the sheriff's return upon the writ, and the receipt of the warden of the jail, the defendant was placed in custody.

After the passing of the above orders, the defendant filed his answer, in which, after denying many of the allegations of the bill, the defendant says, "that he is not about to leave the state of Maryland, or to depart beyond the jurisdiction of her courts, and has no such purpose or intention." And subsequently upon his petition, the papers and proceedings were ordered to be transmitted to this court, and being here, an order was obtained on the 19th of May, that the motion to discharge the writ of *ne exeat*, would be heard on the 29th of the same month, upon notice being served upon the opposite party.

Notice was given accordingly, and counsel have been heard for and against the motion. When the orders of Baltimore County Court were passed, the answer was not filed, and of course, that court has pronounced no opinion upon the effect which that answer should have upon the question now to be

decided. The writ was granted upon the affidavit of the complainant alone, that the defendant was about to depart beyond the jurisdiction of the court. No affidavits were filed in support of the oath of the wife, substantiating acts and declarations of the defendant, indicative of his intention to go abroad, but her right to the writ rested exclusively upon her own statement, that he entertained such an intention. It is not meant, of course, to say that the wife may not make such affidavit, though her power to do so, appears to have been at one time denied. *Sedgwick* vs. *Watkins*, 1 *Vez.*, *Jr.*, 49. That decision appears to have been overruled by the case of *Shaftoe* vs. *Shaftoe*, 7 *Vez.*, 171, and was pronounced by Chancellor Kent, in *Denton* vs. *Denton*, 1 *Johns. Ch. Rep.*, 441–2, not to have been founded on just principles. There can be no doubt, however, that the affidavit of the wife in the cases in which she is permitted to make it against her husband, may be corroborated by the oaths of other persons, deposing to the acts and declarations of the husband, manifesting his purpose to remove himself beyond the jurisdiction of the court.

But in this case the Baltimore County Court has decided that the writ may be granted upon the affidavit of the wife, and with the judgment of that court, upon the case as it was presented to them, the Chancellor does not mean, in any respect, to interfere. The question, and the only question now to be considered, is, whether the foundation upon which the court proceeded, has not been so far taken away by the answer, which was not before them, when the order was passed, as to justify and require this court to discharge the writ.

A preliminary objection was presented by the counsel for the complainant, that this court could not take cognizance of this cause, because at the time of the passage of the act of 1824, ch. 196, which authorized the transfer of cases from the sixth judicial district to the Court of Chancery, no law existed, which gave our courts of equity jurisdiction in cases of divorce, it being supposed, that notwithstanding the prospective as well as the retrospective language of the act, that it only applied to cases to which the jurisdiction of the courts of equity then extended. The Chancellor does not concur in this con-

struction of the act. Its language is, "that in all equity suits now depending, *or hereafter* to be commenced, or instituted, in either of the county courts of the sixth judicial district," the judges, or any one judge, may order the bill, &c., to be transmitted to the Court of Chancery upon suggestion and affidavit, &c. The present is an equity suit, commenced in one of the courts of the sixth judicial district, in virtue of the act of 1841, ch. 262, which conferred upon the Chancellor, and the county courts, as courts of equity, jurisdiction over the subject of divorce, and is, therefore, within the terms of the act of 1824.

It would seem to be settled in England, that the Court of Chancery will not issue the writ of *ne exeat regno*, in cases of alimony, unless there has been an actual decree for alimony by the spiritual courts. That it will not be granted, even where there has been such decree pending an appeal from it by the husband, nor for *interim* alimony, granted *pendente lite*, before a decree, nor for any other sum than that which is actually due for the alimony and costs. *Daniel's Ch. Pr.*, 1926, 1927 ; 2 *Story's Com. on Equity, sections* 1471, 1472. In New York, however, Mr. Chancellor Kent, in *Denton* vs. *Denton*, 1 *Johns. Ch. Rp.*, 364 *and* 441, did grant the writ upon the petition of the wife *pendente lite*. It is possible that the difference in regard to the stage of the cause at which this remedy will be granted in England and in New York, arises from the fact, that in New York, the Court of Chancery has jurisdiction over the question of divorce and alimony, which in England belongs to the ecclesiastical courts, the Court of Chancery there only coming to its aid, to prevent its decree from being defeated, which the former court might be unable to do.

In the case now under consideration, no decree for alimony has been passed, and, indeed, the title to any such decree is strongly contested by the answer in averments and statements responsive to the allegations of the bill. There is, moreover, a wide difference between the statements in the bill and answer with reference to the value of the defendant's estate, the bill alleging him to be worth fifteen thousand dollars, whilst in his answer, he says he is not worth five hundred dollars. The

Baltimore County Court, acting upon the statement of the bill in this respect, ordered the sheriff to detain the defendant in his custody until he should give bond, with approved surety, in the penalty of five thousand dollars. Now, assuming that the defendant is not worth more than the sum stated in his answer, (and no affidavits have been taken to contradict him,) it is manifest, he would, or might be, subject to great difficulty in giving the bond required of him. In the case of *Denton* vs. *Denton*, Chancellor Kent felt the difficulty arising from the uncertainty of the amount of the alimony, and, consequently, the uncertainty of the sum for which to mark the writ of *ne exeat*, though he regarded the difficulty as not insuperable, as the amount of alimony would have a material reference to the rank of the parties, and the property of the husband, and in that case he was shown, by affidavits, to be worth $200,000. But here this writ is marked, if the answer speaks the truth, in a sum ten times as large as the value of the husband's property. Now, although it is to be assumed, in this case, that upon a bill for alimony the writ of *ne exeat* may be granted *pendente lite*, yet there can be no doubt, that some caution and jealousy is to be observed in the application of the rule, lest great injustice may be done to the party against whom it issues. 2 *Story's Com. on Equity, section* 1468.

This is a case, then, in which the writ issued upon the *ex parte* application of the wife, verified alone by her affidavit, before a decree had passed establishing her right to alimony, and in which her right is disputed by strong statements in the answer imputing gross misconduct to her. The allegation of an intention to remove from the state, is positively denied by the defendant, and the question now is, whether, according to the case as presented by bill and answer, the writ shall, or shall not, be discharged.

It would seem, upon principle, that where the writ issues upon the naked unsupported oath of the complainant, it should be discharged upon the counter oath of the defendant, and especially this seems reasonable and proper when the point of difference has reference to the intention of the defendant, in re-

gard to which he must, of course, be able to speak with more certainty than any one else. In the *Maryland Ch. Pr.*, 94, it is said, the writ will be discharged, if, on the hearing it appears that the answer fully denies the existence of the claim, or the intention to leave the state. Lord Eldon in the case of *Amsiuck* vs. *Barklay*, 8 *Vez.*, 595, said, if the writ was granted upon affidavits of declarations, or facts, as evidence of the intention to go abroad, the affidavit of the defendant denying the intention would be of no avail. And in the cases of *Dunham* vs. *Jackson*, 1 *Paige*, 629, and *Mitchell* vs. *Burch*, 2 *Paige*, 606, the Chancellor seemed to consider that the fate of the application for the writ, in the one case, and the motion to discharge it in the other, would depend upon the admitted or undenied intention of the party to leave the state before the decree could be made effectual against him. In *Thomas* vs. *Halsey*, 7 *Johns. Ch. Rep.*, 189, the answer was permitted to be read on a motion to discharge the writ, though the time for filing exceptions to it had not expired, and was held sufficient to remove the ground for the writ, even if well sustained by the bill and the accompanying affidavits. In this case the Chancellor considers it proper, in view of the positive denial in the answer of the intention to leave the state imputed to the defendant by the bill, and of the other defences taken in the answer, to grant the motion, and will pass an order accordingly.

WM. P. PRESTON and WM. ALEXANDER for Complainant.
R. JOHNSON and J. M. CAMPBELL for Defendant.

[The charges of the bill having been sustained by proofs taken under the commission, a decree was passed on the 15th of May, 1848, divorcing the parties *a mensa et thoro*, and by agreement of the parties, allowing the wife the sum of $500 in lieu of all claim for alimony.]