SLUMAN S. BAILEY v. GEORGE W. CADWELL ET AL.

*Ne exeat.*

The writ of ne exeat is not issuable in Michigan by a circuit court commissioner or injunction master as a matter of interlocutory chancery practice.

History of the practice in England and the United States as to the writ of ne exeat.

Error to Kent. (Montgomery, J.) June 19.—July 2.

DEBT on bond. Plaintiff brings error. Affirmed.

*Thomas J. O'Brien* for appellant. Execution for debt cannot issue on a decree until it is enrolled : *Brown v. Haff* 5 Paige 235 ; *Gleason v. Bisby* 1 Clarke Ch. 551 ; and alimony is not a debt: *Lyon v. Lyon* 21 Conn. 185 ; but the writ of ne exeat is issuable : Chancery Rule 17 ; *Cadwell v. Randall* 36 Mich. 251 ; and a proper occasion is an application for alimony : 2 Story's Eq. Jur. §§ 1469, 1871 ; 2 Bish. M. & D. 508 ; *Kirby v. Kirby* 1 Paige 261 ; *Yule v. Yule* 2 Stockt. 138 ; *Denton v. Denton* 1 Johns. Ch. 364 ; and if a circuit judge in chancery can grant it, a circuit court commissioner can : Const. art. vi. § 16 ; Comp. L. §§ 5570, 5582 ; Jennison's Ch. Pr. 327 ; and the sufficiency of the showing on which he acts cannot be questioned in a collateral suit on the bond : *Miller v. Brinkerhoff* 4 Den. 118 ; *Bassett v. Bratton* 86 Ill. 152 ; *Jesup v. Hill* 7 Paige 95 ; *Blue v. Sheppard* 28 Ga. 566.

*Champlin & More* for appellees. The writ of ne exeat is in the nature of an arrest : *Raynes v. Wyse* 2 Meriv. 472 ; and cannot issue unless a debt is due : *Rice v. Hale* 5 Cush. 244 ; and for alimony, only after decree : Dan. Ch. Pr. 1802, 1806 ; it will not issue in cases of fraud : id. 1803 ; the demand which supports it must be equitable, pecuniary and actually due : id. 1805 ; Story's Eq. Jur. § 1474 ; alimony is a debt within the meaning of Const. art. vi. § 33 prohibiting imprisonment for debt : *Steller v. Steller* 25 Mich. 159 ; the writ was discharged in *Peltier v. Peltier* Har. Ch. 29 ; *Cable v. Alvord* 27 Ohio St. 654 ; *Exp. Harker* 49 Cal. 465 ; *Adams v. Whitcomb* 46 Vt. 708 ; see *Aiken v. Richardson* 15 Vt. 500 ; where issuable it cannot be allowed by a circuit court commissioner : *Samuel v. Wiley* 50 N. H. 356 ; the ground on which the writ issues is stated in it, and if improperly issued it must be discharged : *Hyde v. Whitfield* 19 Ves. 345 ; the writ is in the nature of equitable bail, and in cases of alimony is allowed only for arrears actually due, and for costs : *Oldham v. Oldham* 7 Ves. 410 ; it lies for money demands only : *Cowdin v. Cram* 3 Edw. Ch. 231 ; and not unless defendant owes complainant a debt actually due or complain--

ant is entitled to an account: *Williams v. Williams* 2. Green. Ch. 130; *Rhodes v. Cousins* 6 Rand. 188; nor, ordinarily, in a suit for alimony: *Prather v. Prather* 4 Dessau. 33; see *Bylandt v. Bylandt* 2 Halst. Ch. 28.

CAMPBELL, J. This is a suit on a ne exeat bond. The writ was allowed in the preliminary stages of a divorce suit, by a circuit court commissioner acting as injunction master, in 1868.

The court below held that there was no cause of action.

We find no statutes in this State regulating the issue of these writs, and we have had nothing beyond a bare recognition of their possibility since 1838. But we have in the Chancery Act (Comp. L., § 5057) this general rule in regard to jurisdiction: "The powers and jurisdiction of the circuit courts in chancery in and for their respective counties shall be co-extensive with the powers and jurisdiction of the court of chancery in England, with the exceptions, additions, and limitations created and imposed by the Constitution and laws of this State."

In the absence of statutory regulations we must therefore look to the English chancery jurisdiction as the measure of authority. It may have been limited, but it has not been enlarged on this subject by our laws.

There is some reason to think that the practice, which at one time prevailed in some other states, of enlarging this power by a broad discretion, arose out of undefined notions of equitable authority, which in this State we are not at liberty to entertain. However this may be, we are not allowed to interfere with personal liberty without finding some legal warrant for it in statute, or precedents which have similar force with statutes by recognition.

From the organization of the State our legislation has been framed with a view of restraining as far as possible all needless arrests, and never allowing them without a responsible showing and positive authority. The course of the New York courts of equity in refusing to extend to equitable suits the analogies of the Non-imprisonment Act

has not been followed. Our Constitution has put all courts on the same footing in restraining imprisonment for debt, and the enforcement of decrees in equity by attachment has been superseded, as far as possible, by milder remedies.

1. In the English courts the jurisdiction has been jealously limited to cases where the default of the defendant is capable of direct measurement, and clearly made out, and where no other remedy is attainable. In *Boehm v. Wood* 1 Turn. & R. 332, several questions were discussed, and the rules were laid down with much clearness. The necessity of an accurate ascertainment of the measure of the defendant's obligation was recognized, and of its present force as due. No English case has been found decided in modern times, where the probability of a future indebtedness or a future default on an unmatured indebtedness, has been allowed to furnish ground for a writ. 3 Dan. Ch. Pr. 1802, and cases.

The one exception to the rule confining the writ to equitable debts arose in the case of alimony, and was allowed because the Ecclesiastical courts could not enforce its payment by any adequate means. 3 Dan. Ch. Pr. 1802 and cases cited. In *Denton v. Denton* 1 Johns. Ch. 441, Chancellor Kent allowed the writ in a suit pending before alimony granted, and this case has been followed in New York. But the authorities which he relied on do not support any such doctrine, but it is distinctly repudiated. It is well settled that the writ cannot be allowed except for arrears due and unpaid. *Shaftoe v. Shaftoe* 7 Ves. 171; *Dawson v. Dawson* 7 Ves. 173; *Haffey v. Haffey* 14 Ves. 261. In *Coglar v. Coglar* 1 Ves. 94, Lord Thurlow suggested that the impossibility of ascertaining the proper sum at which to fix security was in his judgment an insurmountable obstacle. In *Shaftoe v. Shaftoe*, Lord Eldon declared his reluctance, as a matter of principle, to allow the writ for alimony at all, even after judgment, and in denying it before judgment uses this language : " It is wrong, that, before that decree is made, this Court is to take it for granted, that there will be a decree for alimony and separation, and to shut up the husband

pending that suit for any sum it shall name, lest there should be such a decree. Suppose, the plaintiff should miscarry in her suit, after this writ has issued: what recompence can be made to him? If the suit has effect, the difficulty is, for what sum to mark the writ. The ground, that the plaintiff would be without remedy, will not do; for that would apply to a judgment at law, where the man cannot be taken in execution." In *Dawson v. Dawson*, referring to this case, he says: "In a late instance, search was made; and no case could be found authorizing me to mark the writ for more than the sums actually due."

The same eminent chancellor in other cases expressed himself strongly against the application of "this high prerogative writ" to any private cases, except "with great caution and jealousy, and that its application to these purposes can only be justified by usage and practice." *Tomlinson v. Harrison* 8 Ves. 32; *Etches v. Lance* 7 Ves. 417. For the same general view of the caution required in avoiding its extension, see *Howden v. Rogers* 1 Ves. & B. 132; *Dick v. Swinton* Id. 371; *Hannay v. M'Entire* 11 Ves. 53.

In chapter 40 of Daniell's Chancery Practice the whole subject is fully treated, and the same results ascertained.

In *Street v. Street*, 1 T. & R. 322, the question arose concerning the application of the writ to temporary alimony, and it was held that it could not be used at all for alimony pendente lite. This doctrine does not seem to have been departed from.

We think that our laws do not favor the granting of the writ in such a case as that before us, and that its allowance was void and illegal.

But we should not be justified in overlooking the excess of jurisdiction of the officer who issued it, even if otherwise correct. This writ was allowed by an injunction master, as a mere matter of practice. But the authority to issue this writ is properly regarded as an exercise of very high judicial discretion which cannot be vested except in those who exercise the ordinary judicial power of courts. It is very far removed from the domain of ordinary practice. In

*Boehm v. Wood* 1 T. & R. 332, there seems to have been a serious question raised concerning the authority of the Master of the Rolls to allow the writ. Lord Eldon recognized the power of that judge as co-extensive with his own in ordering the writ, but stated that the lord chancellor was the only one who could actually issue it, and said that he would not issue it without using his own judgment and referring it back to the Master of the Rolls for re-consideration, in case of serious doubt. He indicates throughout his understanding that the matter involves the most important exercise of judicial discretion. In this view the great English chancellors have agreed, and their zeal in discountenancing needless interferences with private liberty is worthy of great respect.

The United States Judiciary Acts have always proceeded on the same theory. The supreme and circuit judges are the only persons authorized to allow the writ when the court is not actually sitting. Rev. St. § 717. It was held very early that the district judges, although members of the circuit courts, could not issue this writ. *Gernon v. Boecaline* 2 Wash. C. C. 130.

With this view of the office and importance of the writ, and in the absence of any constitutional or statutory regulations changing it, we have no hesitation in saying that it cannot be allowed in any case except by the judge himself, and that the power is not one of those mere chamber powers which may be vested in a circuit court commissioner, as a matter of interlocutory practice.

We think the circuit judge who tried the case was correct in his conclusion that no recovery could be had on the bond.

The judgment must be affirmed with costs

The other Justices concurred.