JAMES F. JACKSON, III *v.* WILMA L. JACKSON

[No. 638, September Term, 1971.]

*Decided July 3, 1972.*

The cause was argued before ORTH, THOMPSON and POWERS, JJ.

*Courtland K. Townsend, Jr.,* with whom were *Clark & Cromwell* on the brief, for appellant.

No appearance for appellee.

THOMPSON, J., delivered the opinion of the Court.

Under Article 5 of the Declaration of Rights of the Constitution of Maryland of 1867, the inhabitants of this State are entitled to the common law as it existed in England on July 4, 1776, assuming of course, Maryland has made no change in the intervening period of time. *Fischer v. Ball,* 212 Md. 517, 129 A. 2d 822, 825. See *Latz v. Latz, a/k/a Schafer,* 10 Md. App. 720, 730, 272 A. 2d 434; *State v. Magliano,* 7 Md. App. 286, 292, 255 A. 2d 470. One of the rights to which the inhabitants of Maryland are entitled is, in an appropriate case, to request a court of chancery to issue a writ of *ne exeat.* The writ is described in Bouvier's Law Dictionary as follows:

> "The name of a writ originally employed in England as a high prerogative process, for political purposes; Story, Eq. Jur. § 1467; 50 N. H. 353; but now applied in civil matters only, issued by a court of chancery, directed to the sheriff, reciting that the defendant in the case is indebted to the complainant, and that he designs going quickly into parts without the state, to the damage of the complainant, and then commanding him to cause the defendant to give bail in a certain sum that he will not leave the state without leave of the court, and for want of such bail that he, the sheriff, do commit the defendant to prison.

"This writ is a part of the English chancery practice and is usually a part of that practice in states where it is in force. * * *

"This writ is issued to prevent debtors from escaping from their creditors. It amounts, in ordinary civil cases, to nothing more than process to hold to bail, or to compel a party to give security to abide the decree to be made in his case;
. . . ."

The only Supreme Court case discussing the writ seems to be *Ginsberg v. Popkin*, 285 U. S. 204, 52 S. Ct. 322, 76 L. Ed. 704, in which the Court held that the writ was not issuable against officers of a bankrupt corporation. The Court said at 285 U. S. 209, 52 S. Ct. 324:

"The writ is a restraint upon the common right of movement from place to place within the United States and upon emigration. It has been abolished in some states and its use is largely regulated and restricted by statute in others. And section 261 of the Judicial Code strictly governs the granting of the writ in federal courts."

Under Section 261 (later 28 U.S.C.A., § 376), United States District Courts were specifically authorized to issue the writ of *ne exeat*. Although the specific statute has been repealed, the subject matter may be covered by the statute authorizing Federal Courts to issue "all necessary writs." 28 U.S.C.A. 1651.

Under the English law it was firmly established the writ would not issue in cases of alimony unless the alimony had been already decreed and then only to the extent of the amount due. The proposition is so well established that an extensive analysis of the English cases is not necessary.[1] We will, however, quote by way of illustration from the case of *Shaftoe v. Shaftoe*, 7 Ves. Jr. 171, 173, (Ch. 1802):

---

1. Story, *Equity Jurisprudence*, § 1917; E. G. Miller, Jr., *Equity Procedure*, § 254; C. F. Beach, Jr., *Modern Practice in Equity*, § 613, 29 Harv. L. Rev. 206, and other cases hereinafter cited.

"[I]t is wrong, that, before that decree is made, this Court is to take it for granted, that there will be a decree for alimony and separation, and to shut up the husband pending that suit for any sum it shall name, lest there should be such a decree. Suppose the plaintiff should miscarry in her suit, after this writ has issued: what recompense can be made to him? If the suit has effect, the difficulty is, for what sum to mark the writ. The ground, that the plaintiff would be without remedy, will not do; for that would apply to a judgment at law, where the man cannot be taken in execution."

In an early American case, *Denton v. Denton,* 1 Johnson's Ch. Rep. 364, 441, (New York 1815) Chancellor Kent allowed the issuance of the writ prior to a decree for alimony primarily on the basis that it "is essential to justice" to prevent the departure of the husband from the state where the wife would be left without support. The Chancellor also cited some English cases which do not seem to support the action taken. See the discussion in *Bailey v. Cadwell,* 16 N. W. 381 (Michigan 1883), where the Court applied the English rule saying it had no power to extend equitable authority and saying further it was not allowed to interfere with personal liberty without finding some authority for it in statute or precedent. Some courts have followed the New York lead holding that the writ could issue prior to the entry of a decree for alimony. See 8 A.L.R. 327; *National Automobile and Casualty Insurance Co. and Reed Bail Bond v. Queck,* 1 Ariz. App. 595, 405 P. 2d 905; *Lamar v. Lamar,* 123 Ga. 827, 51 S. E. 763; *Blount v. Blount,* 231 Miss. 398, 95 So. 2d 545; *Ex Parte Grbic,* 170 Wis. 201, 174 N. W. 546.

In Maryland there is no statute nor constitutional provision expressly modifying the common law with respect to the writ. Miller, in his *Equity Procedure, supra,* § 241, discussing equitable procedure in Maryland, stated that

the constitutional provision abolishing imprisonment for debt was generally regarded in this state as having abolished the writ.[2] He did cite, however, an earlier writer, Phelps, *Jur. Eq.*, § 125, who felt that in some instances the writ could be used. He also stated that prior to the Constitution of 1851, the writ was frequently used in Maryland and "was an arrest in the nature of equitable bail, and the equitable demand must have been actually payable for a liquidated sum."

The relatively new Maryland Rules, however, clearly contemplate the use of the writ in cases involving alimony or support of children. Rule S72 d:

> "In an action involving alimony or support of children the writ of *ne exeat* may issue upon petition verified by or on behalf of the person applying for the writ, stating that the person against whom the writ is to be directed intends to leave the State and place himself beyond the jurisdiction of the court."

The few Maryland cases which have considered the writ have been decided on the basis of the English common law and indicate a cautious approach to allowing its issuance.

In *Cox's Executors v. Scott*, 5 H. & J. 384 (1822), the Maryland Court held the writ could not issue where the claim was based upon a note not yet due, saying at 389:

> "The late decisions in England show that the writ of *ne exeat* can in no case be sustained but where the Court of Chancery hath original or concurrent jurisdiction. But this Court will not be controlled by those decisions further than is consistent with the sound policy of the commercial interest of the country, and the rules of jus-

---

2. Note that alimony and support for children are not debts within the constitutional provisions prohibiting imprisonment for debt. *Dickey v. Dickey*, 154 Md. 675, 141 A. 2d 387; *Speckler v. Speckler*, 256 Md. 635, 261 A. 2d 466.

tice. Those cases decide, that to sustain the writ, the demand must be an equitable demand, in the nature of a debt actually due—a debt due in conscience, and where the party has no remedy at law."

In *Johnson v. Clendenin and Way*, 5 G. & J. 463 (1833), a writ of *ne exeat* had been issued apparently on a liquidated claim cognizable in equity. The Court held that upon the surrender of the body of the debtor to the sheriff upon an attachment under the final decree, the sureties on the *ne exeat* bond were released even though the prisoner subsequently escaped from the sheriff's control.

The only reported Maryland case that has come to our attention concerning the use of the writ of *ne exeat* in a case involving alimony or support, is *Bayly v. Bayly*, 2 Md. Ch. 326 (1847). In that case the chancellor expressly refused to consider whether or not the writ was properly issuable subsequent to the filing of the bill, but prior to the filing of the answer; he held that upon the filing of the answer denying an intention to leave the state, strongly contesting the wife's entitlement to alimony and her assessment of the value of the defendant's estate, the writ must be discharged. The Court at page 332, "It would seem to be settled in England, that the Court of Chancery will not issue the writ of *ne exeat regno*, in cases of alimony, unless there has been an actual decree for alimony by the Spiritual Courts." This case has been cited as strongly putting Maryland in line with the Michigan Courts and holding that a writ of *ne exeat* cannot issue prior to the time a court has decreed alimony or support. 8 A.L.R., *supra*, page 330.

The Court of Appeals in *dictum*, briefly discussed the writ in a relatively recent case, *Oles Envelope Corp. v. Oles*, 193 Md. 79, 91, 65 A. 2d 899, (1949) in the following language:

"In England a husband who would not pay alimony was excommunicated by the ecclesiastical

court. In 1813 excommunication by the ecclesiastical courts for civil purposes was forbidden, and thereafter a husband in contempt for disobeying a decree for alimony was certified to the Court of Chancery, from which tribunal a writ of contempt was issued for his imprisonment. If imprisonment did not secure obedience, then a writ of sequestration was issued against his property. The writ of *ne exeat* was also used in aid of an alimony decree passed by the ecclesiastical court. If after such a decree, the husband was about to flee from the country to evade payment, the Court of Chancery would restrain him by this writ. The latter Divorce Court was directed by statute to enforce its orders after the practice in chancery. 20 & 21 Vict., ch. 85; *2 Bishop, Marriage, Divorce and Separation*, secs. 1090, 1091, 1112."

## THE INSTANT CASE

James F. Jackson, the appellant, contends the Circuit Court for Montgomery County committed reversible error in refusing to quash a writ of *ne exeat* because: (1) the evidence was not sufficient to support a finding that appellant intended to leave the state and place himself beyond the jurisdiction of the court; (2) that the writ as issued under Maryland Law and Maryland Rule S72 d is inherently unconstitutional and unconstitutional as applied to the appellant because it restricted his right to travel outside of the State of Maryland without due process of law; (3) that the execution of the writ amounted to an unconstitutional imprisonment for debt; and (4) the requirement of bond as applied in this case for an indefinite period of time amounts to a deprivation of property without due process of law.

The facts show that on November 11, 1971, the appellant's wife filed a Bill of Complaint for Divorce A Vinculo Matrimonii on the grounds of adultery. On November 15, 1971, an affidavit of the wife was filed pur-

suant to which the court signed an Order issuing a writ of *ne exeat* with bond fixed in the amount of $1,000.00. On the same day the wife met her husband, who was returning from a business trip, at Friendship International Airport and drove him to their home in Silver Spring where they had been living as husband and wife with their three minor children. When they arrived at their home, the appellant was arrested by Deputy Sheriffs of Montgomery County and incarcerated in the Montgomery County Jail pursuant to the provisions of the writ. Appellant subsequently posted bond in the amount of $10,000.00. The discrepancy in the amount thereof apparently being due to some error in communications between the clerk's office and the commissioner who accepted the bond.

On November 17, 1971, the appellant, through counsel, filed a Verified Answer to the wife's Bill of Complaint, along with a "Motion to Quash the Writ of Ne Exeat, an Affidavit, and a Memorandum of Law in Support of the Motion."

At a hearing on November 18, 1971, there was testimony the wife had filed a previous suit for divorce on the grounds of adultery but that suit had been dismissed the preceding August and the parties had resumed living together as man and wife. The wife testified that she had no income; that her husband had informed her he did not want her to apply for a divorce in Maryland on the grounds of adultery; that he had rented an apartment in Florida for the purpose of establishing a residence so that she could get a Florida divorce on the grounds of incompatibility; that he had told her a number of times he would "see that [she] had nothing to live on" and suggested "he was going to take off for Bolivia and Africa" and live like a bum; that he had on a number of recent occasions stated "he can be the biggest bum on earth and he can get lost in the Everglades," and that after being served with the writ in this case, the husband had provided no support for her and took her credit cards and automobile away from her.

After the hearing, the court denied the Motion to Quash the Writ and set the bond in the amount of $10,000.00. An appeal from the denial of the motion was promptly filed.[3]

Since we hold a writ of *ne exeat* cannot be issued in Maryland prior to the time there has been a default under a decree for alimony or support, we do not reach the contentions raised by the appellant. In the absence of binding authority in Maryland to the contrary we feel bound to follow the reasoning of the English and Michigan Courts that a writ of *ne exeat* cannot issue until a court has determined that some alimony is due and payable and there has been a default. The facts of the instant case show that at the time the writ was issued, the appellant had been supporting his wife and was not in any manner in default. Although the evidence showed some vague threat to leave the country, the record suggests strongly that the husband's intention probably was to go only to the state of Florida, where, under Article IV, § 1 of the Federal Constitution, a Maryland alimony decree as to past due payments would be enforceable. *Loughran v. Loughran,* 292 U. S. 216, 54 S. Ct. 684, 78 L. Ed. 1219. In addition, Maryland and Florida, as well as the great majority of other states, have enacted some form of the Reciprocal Enforcement of Support Act which makes an absconding husband amenable to other interstate processes. Am.Jur.2d Desk Book, Doc. No. 129. There are also other remedies available to deal with a departing husband. See discussion in *Oles Envelope Corp. v. Oles, supra.*

The English precedents are clear the writ would not

---

**3.** We are not unmindful that the decree in the instant case is not a final decree and that only those appeals from interlocutory orders which are covered by Md. Code, Art. 5, § 7 are permitted. One of the types of interlocutory orders which can be appealed is set forth in § A "An order granting or dissolving an injunction." Although a writ of *ne exeat* has somewhat different qualities from an injunction, a part of it as issued herein ordered that the defendant not leave the State of Maryland without permission of the court which appears to be in the nature of an injunction and therefore, immediately appealable prior to the passage of a final decree.

issue prior to the time an ecclesiastical court had declared alimony. See n. 1, *supra*. In these times our notions of individual liberty are too strong to permit any expansion of the writ to permit incarceration of a husband who is not in default of supporting his wife simply because she feels that he might at some future date default. We must weigh the consequences of our rule: the likelihood a jealous and vindictive wife may induce improper issuance of the writ, against the likelihood a wife might be left without remedy should an actual default occur; we must weigh the likelihood of the wife becoming a public charge against the likelihood that a husband who has made an idle threat during the course of a marital dispute may be incarcerated prior to any default in his obligation to his family. To us, the remedies not available to a wronged wife or her children are ample without risking improper imprisonment of the husband before default. Reason and English precedent agree, thus we are not persuaded to follow the few sister states on a contrary course; particularly when such Maryland authority as exists tends to support our rule. We hold that a writ of *ne exeat* cannot issue until after a court has passed a decree awarding alimony or support and there has been a default thereunder.

> *Order denying motion to quash writ of ne exeat reversed.*
> *Appellant to pay the costs.*