IN THE

## SUPREME COURT OF THE STATE OF GEORGIA,

### AT CASSVILLE,

| 8  295 |
|f123 828|

MARCH TERM, 1850.

~~~~~~~~~~~~~~~~~~~~~~~~

No. 48.—JOHN McGEE, plaintiff in error, *vs.* ABBY R. McGEE, defendant in error.

[1.] On application for a writ of *ne exeat republica,* by a *wife* against her husband, pending a suit for a *partial* divorce and alimony, her affidavit is admissible—the wife, in this respect, being considered independent of her husband.

[2.] If the threats of the husband, that he will leave the State, come to the knowledge of the wife, through the information of others, the affidavit of the third person should, if practicable, be filed with hers. If, however, she swears *absolutely* that he has threatened to remove, that is sufficient.

[3.] A writ of *ne exeat* may be granted in this State, prior to any decree for alimony. The Court, in marking the writ, will exercise a sound discretion, under the special circumstances of the case—having due regard to the rank of the parties and the property of the husband, so as to prevent oppression or extortion.

[4.] Where any person is arrested by virtue of a writ of *ne exeat,* he may be discharged, on giving bond, with good and sufficient security, either that he will not depart this State, or will pay the eventual condemnation money ; or by showing that the writ ought not to have been granted.

In Equity, in Walker Superior Court. Decision on demurrer, by Judge WRIGHT, October Term, 1849.

Abby R. McGee filed her libel for a divorce, *a mensa et thoro,* against her husband, John McGee, and praying for alimony, as provided by the Statute.

Pending the suit for a divorce, Abby R. McGee filed her bill, alleging the pendency of the suit, her own necessitous condition, and that John McGee "had threatened and declared he would depart the realm, and remove his property beyond the limits of the State." The prayer was for a writ of *ne exeat republica.*

The bill was verified by the affidavit of Abby R. McGee, who swore that " the facts stated were true, so far as they concerned herself; and so far as they concern the acts and deeds of others, she believed them to be true."

To this bill a demurrer was filed, on several grounds; among others—

1st. That the affidavit of the wife was not a sufficient verification of the bill.

2d. The case made by the bill did not authorize the granting of the writ of *ne exeat.*

3d. The writ will not be granted, until there was a decree, allowing the alimony.

The Court below overruled the demurrer, and further held, that if the defendant filed his answer, denying the facts stated in the bill, the Court would, nevertheless, hold up the writ, until a trial of the libel for divorce.

To which decision, exceptions were filed by John McGee; and on these exceptions, error has been assigned.

W. AKIN, for plaintiff in error, in support of the points made, cited the following authorities :

7 *Vesey,* 171, 173, 410, 412.   2 *Story's Com.* 689, 692.   1 *Atkyns,* 521.   3 *Atkyns,* 521, '3, 503.   3 *Daniel's Ch. Pr.* 1931, *and note* 2, 1932, 1927.   6 *Ves.* 284.   14 *Ves.* 261.   2 *Mad. Ch.* 227.

C. PEEPLES, representing W. H. UNDERWOOD, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] The first objection taken to the decision at the Circuit, is, that the evidence was incompetent, on which the order for the writ of *ne exeat republica* was granted—being founded on the affidavit only of the complainant, the wife of the defendant.

It is true, that the case of *Sedgwick vs. Watkins,* 1 *Ves. Jr.* 49,

sustains this objection ; but Chancellor *Kent,* in *Denton vs. Denton,* 1 *Johns. Ch. R.* 441, says that this case is not founded on just principles ; and, besides, he considered it as virtually overruled in *Shaftol vs. Shaftol,* 7 *Ves.* 171, where a similar application was made, on the oath of the wife, and no objection was taken, but the Chancellor proceeded at once to consider the merits of the motion.   And it would seem, that if the wife is permitted to sue her husband, in her own name, as she has done, without objection, in this case, her affidavit as complainant is admissible, on the same ground as that of any other complainant ; and it is the constant practice of the Courts, to grant this writ on the oath *alone* of the *party.*

[2.] It is contended that, admitting the evidence to be competent, it was not sufficient, in connection with the charges in the bill, to obtain the writ.   The complainant alleges that she " entertains serious apprehensions that the defendant will depart the realm, and remove his property beyond the limits of the State— *which he has threatened and declared he would do ;"* and her affidavit is in the usual form, namely, that the facts stated in the bill, so far as they concern herself, are true ; and that, so far as they concern the acts and deeds of others, she believes them to be true.

We admit the law to be, that the complainant must not only show that the demand will be endangered by the defendant's going abroad, but must charge, *positively,* that the defendant is going out of the State, or *that he has said so.*   6 *Rand. R.* 188. And this, we think, is substantially done.   Had the complainant said, as it is assumed in the argument she did, that she had been *informed* by others of his threat, the affidavit of this third person should, if practicable, have been filed ; but, from any thing which appears to the contrary, the threat may have been made to the complainant herself.   At any rate, in the language of the authority, she does charge, *positively,* that she entertains just fears that he will remove, and that he has said so.

[3.] But the main point in this record is, that in cases of alimony, Courts of Equity will not grant the writ of *ne exeat,* unless there has been a decree, and then only for what is actually due ; and further, that Courts of Equity, in Georgia, have no jurisdiction in the premises, in this State.

As this last proposition was not insisted on in the argument, I shall consider it as abandoned.

The writ of *ne exeat regno* was a high prerogative right, originally applicable only to the purposes of State, but afterwards extended to private transactions. In England, *formerly*, it was confined to cases of equitable debt, and was equivalent to equitable bail; and the doctrine of Chancery was, that the debt for which the writ issues, must be due and certain, and must be such, that the sum to be marked upon the writ could be ascertained; and that, in cases of alimony, the Courts of Equity would not interfere, unless alimony has already been decreed, and then, only to the extent of what is due; and that, if there was an appeal from the decree pronouncing alimony, and, *a fortiori*, if no alimony has been decreed, and the case is a *lis pendens*, Courts of Equity will abstain from granting the writ. 2 *Story's Eq. Jur.* §1472, *and authorities cited.*

This rigid rule, however, has not been strictly adhered to in this country—even in those States where the Common Law, as in Georgia, has been adopted. Accordingly, we find Chancellor *Kent* declaring, in *Denton vs. Denton*, 1 *Johns. Ch. R.* 365, that " the allowance of a *ne exeat*, where the husband threatens to leave the State, and his wife without any support, is essential to justice, and has been allowed in such cases."

In 1813, the Legislature of Georgia passed an Act, " to authorize the Judges of the Superior Courts to grant writs of *ne exeat*, in certain cases therein mentioned;" and the preamble recites, that " whereas, great evils have existed, and do yet exist, in this State, in consequence of the law of England, regulating writs of *ne exeat*, not having provided for cases where the demand set forth by the complainant is not due"—for remedy whereof, it is enacted, that " the Judges of the Superior Courts shall be, and they are thereby authorized, to grant writs of *ne exeat*, as well in cases where the debt or demand is not due, but exists fairly and *bona fide* in expectancy, at the time of making application, as in cases where the demand is due." It further provides, that " in case of joint and several obligors, if any one or more of them are about to remove without the jurisdictional limits of this State, and are carrying off their property, leaving one or more fellow-obligors, bound with them for the payment of any debt, penalty, or for the delivery of property at a certain time, which time has not arrived, such obligor or obligors, who remain, shall have the benefit of the writ of *ne exeat*," &c. All securities, likewise, are al-

McGee *vs.* McGee.

lowed the advantage of this remedy. *Prince*, 440, 441. It is obvious that this Act has overturned and superseded the whole doctrine of the English Law upon this subject, and made the writ of *ne exeat* applicable to all sorts of liabilities—due or undue—certain or otherwise—if they, *bona fide*, exist in expectancy at the time the writ is applied for.

Now, it will be borne in mind, that our Statute requires that in cases where partial or conditional divorces are granted, the Jury shall inquire into the situation of the parties before their intermarriage, and also at the time of the trial; and they *shall*, by their verdict or decree, make provision out of the property of which the husband may be possessed, for the separate maintenance and support of the wife and children, if there be any; which verdict or decree shall be carried into effect, &c. *Prince*, 187. The bill charges that the defendant has property in possession, of the value of $4,000, and that there are no children; and the complainant not only makes a case in her bill, which shows that she is entitled to suitable provision for her maintenance, but her affidavit states expressly, that she considers herself entitled to adequate support out of her husband's property. Here, then, in contemplation of the Statute of 1813, is "a *bona fide* demand, existing in expectancy," and comes both within the spirit and letter of the Act. We feel the less hesitancy in coming to this conclusion, not only because it is essential to the ends of justice, but it is warranted by the universal practice which has obtained throughout the State, under this Act.

[4.] Complaint is made in the bill of exceptions, that the Court decided, in advance, that if the defendant should file his answer, denying the charges in the bill, the *ne exeat* should still be continued, till the hearing of the libel for divorce; and that the only mode by which the defendant could relieve himself from the writ, was by giving bail, as at Common Law, or bond and security for the eventual condemnation money.

The Act of 1830 declares, that "in all cases where persons may thereafter be arrested by virtue of writs of *ne exeat*, they shall be discharged, on their giving bond, with good and sufficient security, either that they will not depart this State, or for the payment of the eventual condemnation money." *Prince*, 468.

It is somewhat inaccurate, therefore, to prescribe bail to be given, as at *Common Law*, where the condition of the recogni-

zance is, that in case the defendant is cast in the suit, he (the defendant) will satisfy the condemnation, or render his body into prison in execution for the same, or he (the bail) will do it for him : whereas, as we have seen, under the Act of 1830, the only condition of the bond is, that the defendant will not depart the State, or satisfy the ultimate recovery.

But we apprehend that it is still competent for the defendant to show, as he might do before, that the writ of *ne exeat* ought not to have been granted. 2 *Tuck. Com.* 486. Otherwise, writs of *ne exeat* would often operate very harshly. We do not say that we should undertake to control the discretion of the Circuit Judge, should he hold, as he said he would, that he should retain the writ till the hearing of the divorce, notwithstanding the defendant should, by his answer, deny all the charges in the bill ; still, as a matter of legal right, we should be loth to sanction the principle, that the door of justice was barred in this case, against the privilege of being heard.

Not viewing any of the obstacles, then, to this proceeding, as insurmountable, and taking it for granted, that while Courts will maintain this writ, for the purpose of securing to the wife and offspring provision, in accordance with the rank of the parties and the fortune of the husband, that they will take care, at the same time, that it is not used for oppression and extortion :

We affirm the judgment of the Superior Court.