ABNER McGEHEE, Exe'or., &c., plaintiff in error, vs. WILLIAM POLK, et al., defendants in error.

[1.] When a bill praying for a writ of *ne exeat* is verified in the usual form of affidavits to bills in equity, resort must be had to the charges in the bill to decide whether the facts are sufficient to entitle the complainants to the writ.

[2.] By the English writ of *ne exeat regno*, the defendant was bound not to go beyond seas without leave of the Court; the act of 1830 allows an alternative, viz: to give bond for the eventual condemnation money.

[3.] In bills for account and administration of assets, no certain balance need be sworn to, to entitle the complainants to the writ of *ne exeat*. It is sufficient if there is a clear affidavit of assets received.

[4.] The will of the testator having been proven in Georgia, and letters testamentary issued in this State, where the testator died, and the executor and legatees lived at the time, and the property being all situated here, the Courts of this State will not surrender their jurisdiction over the person of the trustee, and remit the *cestui que trusts* to a foreign power, notwithstanding the voluntary removal of the trustee thither.

[5.] In a bill praying a *ne exeat*, it is ènough, that it is distinctly stated that the defendant resides out of the State. Danger of loss will be inferred from that fact alone.

In Equity, from Muscogee county. Decided by Judge WORRILL. November Term, 1857.

The bill of exceptions in this case was filed by Abner McGehee, against the decision of the Court below, refusing to dissolve a writ of *ne exeat* which had been issued against him. The following are the facts of the case:

Jefferson J. Lamar died in the county of Stewart, Georgia, in December, 1840, having, by his will, made shortly before his death, appointed Abner McGehee and Thomas Lamar, both of the said county of Stewart, his executors, and on the 6th of January, 1841, the said will was admitted to probate in the Court of Ordinary for the county of Stewart. On the same day A. McGehee was duly qualified, and on the 7th of January, 1841, letters of administration were granted to him. On the 3d of May following, Thomas Lamar, the other executor, was also qualified, and letters of administration were

granted to him, but he never interfered in the management of the estate. Appraisers were appointed by the Court to appraise the estate, and they valued the property, real and personal, at $172,481 48. The whole of the estate was taken possession of by McGehee, who at once proceeded to sell and convert into money nearly the whole of the property. Shortly afterwards A. McGehee removed to Muscogee county, carrying with him the whole of the proceeds of the estate, which had been sold, and some negroes he had not disposed of, and caused the administration of the estate to be transferred to Muscogee county. In 1842, he made a return of a portion of the sales and of some disbursements, but did not verify the same by affidavit, or the filing of vouchers, and shortly afterwards removed to Alabama without any action of the Court having been taken on this return.

Jefferson J. Lamar, the testator, left two children, Lucius Mirabeau Lamar, and Rebecca Eveline, who subsequently intermarried with William Polk, and by his will gave all the residue of his property, after certain specific legacies, to these two children, share and share alike, and directed his executors to pay over one-half of his son's share to him when he attained the age of 21, and the other half when he had attained the age of 26, unless his executors, in the exercise of a sound discretion, might deem it expedient to pay over the same at an earlier period. And as to the share given to his daughter, the testator directed that his executors should hold one half of the same to the sole and separate use of his daughter free from the control of any husband with whom she might intermarry, and if they should deem it expedient, he directed then to appoint two or more fit persons to hold the same as trustees for the same; and as to the other half, the testator directed that his executors should place it in the hands of her husband free from all trusts or incumbrances.

In the month of May, 1857, the said Lucius Mirabeau Lamar and William Polk, as trustee for the said Rebecca Eveline, his wife, filed their bill in equity against the said Abner

McGehee. The plaintiffs, in their bill, set out the facts above stated, and also certain sales of the trust estate and investments of the trust funds, and other dealings of the said Abner McGehee, in respect of the estate of the said Jefferson J. Lamar. That from information derived from valuations by accountants, they believed that the assets of the estate in the hands of the said Abner McGehee, amounted to between 400 and 500 thousand dollars. That McGehee, though frequently requested so to do, had totally failed to pay over or invest the several portions of the estate according to the provisions of the said will, and that with the exception of certain small amounts (set out in the bill) McGehee had paid over nothing to either of the children of the testator. They also stated, that McGehee resided in Alabama, and although notified by the Court of Ordinary of Muscogee county, so to do, had made no returns of the estate, except the informal one which he made in 1842. That McGehee had refused to inform either of the parties what the amount of the bequests were, and when urged so to do, had stated that he could not come within 40,000 of the amount of the estate which, of right, ought to be in his hands. The plaintiffs charged that from McGehee having removed from Georgia, carrying with him a large portion of the property, and from his having refused to account as to the condition of the estate, they apprehended that the funds were in danger; that if they proceeded against him before the Court of Ordinary, he would keep beyond the jurisdiction of the Court, and compel them to settle with him at any sacrifice he might choose to dictate; that the Court of Ordinary had no restraining power, and they could only have relief in a Court of Chancery. Under these circumstances they prayed that the said McGehee might answer to the facts stated in the bill, and might be decreed to account to the plaintiffs in respect of the trust estate in his hands, and to pay over or invest the trust estate according to the provisions of the will; and that a writ of *ne exeat* might be issued restraining the said McGehee from leaving the State of Geor-

McGehee vs. Polk et al.

gia until a final decree should be had, or until he should give security for the ·payment of the eventual condemnation money. They also prayed for an injunction to restrain the defendant from selling, or in any way encumbering the trust property in his hands, and for the appointment of a receiver.

The plaintiffs verified the facts stated in the bill by affidavit, in the usual form, that the facts stated in the bill, as of their own knowledge, were true, and that the facts stated as on the knowledge of others, they believed to be true.

On the 18th of May, 1857, a writ of *ne exeat* was issued against the said A. McGehee, under which he was, on the 9th of June, 1857, arrested, and gave bond and security to the amount of ———.

In November Term, 1857, McGehee moved the Court to dissolve and discharge the *ne exeat*, on the grounds,

1st. That the allegations in the bill were insufficient to authorize a *ne exeat :* and

2dly. Because the affidavit to the said bill was wholly insufficient to authorize the same.

The Court overruled the motion, and to this decision defendant excepted.

WELLBORN, JOHNSON & SLOAN, for plaintiffs in error.

MOSES & MOISE, and JONES & JONES, *contra.*

*By the Court.*—LUMPKIN, J. delivering the opinion.

A bill having been filed against the plaintiff in error in this case, as Executor of Jefferson Lamar, deceased, by the complainants, as the only legatees under the will of the testator, a writ of *ne exeat* was prayed for and granted. A motion was made to discharge the *ne exeat,* upon two grounds : 1st· Because the allegations in the bill were insufficient to authorize a *ne exeat :* and 2d. Because the bill was not properly verified.

[1.] The affidavit is in the usual form to bills in equity; namely, that " the facts stated in the bill as of the complainants' own knowledge, are true; and the facts stated, as on the knowledge of others, they believe to be true."

The two objections then, resolve themselves into one, and that is, whether the facts charged in the bill as coming within the knowledge of the complainants, and their belief as to the truth of the facts, founded on the knowledge of others, are sufficient to entitle the complainants to the writ of *ne excat ?*

[2.] I would remark that objection has been made to the form of the bond in this case; the conditions of which is, that the party " shall not depart the State, or that he will pay the eventual condemnation money."

While we do not consider this point legitimately made upon the record, we may say, that the bond is in exact conformity to the act of 1830. (*Cobb,* 527.). The words of the statute are, " in all cases where persons may be hereafter arrested, they shall be discharged on their giving bond with good and sufficient security, either that they will not depart the State, or for the payment of the eventual condemnation money." By the English writ of *ne exeat regno,* the defendant was bound not to go beyond seas without leave of the Court. (*Beames on ne exeat regno, pp.* 18, 19.) The act of 1830 is a relaxation of the English law, in allowing an alternative, viz: to give bond for the eventual condemnation money.

The law may, or may not be too rigorous. It is not in the power of the Courts to alter or mitigate it.

[3.] It is contended that no sum is set forth in the bill, with sufficient certainty. The complainants attach the inventory and appraisement to the bill, state the various sales of property, and after setting forth details, as far as it was in their power to do, they claim between four and five hundred thousand dollars to be now due them, upon a fair accounting by the executor. If they cannot be more specific, the fault is

not theirs. The executor has made no return since 1842 ! And only an informal one then; not verified nor approved by the Court of Ordinary. And when called on by the complainants to ascertain the balance coming to them, the executor replied, that he could not come within $40,000 of the amount! Surely the complainants will be excused from greater particularity under such circumstances. Indeed, under our legislation, if not before, certainty in this respect, is not indispensable. (*McGehee vs. McGehee*, 8 *Ga. Rep.* 299.) But even at common law, in bills for account and administration of assets, if there is a clear affidavit of assets received the Court will grant the writ of *ne exeat*. (*Beames*, 38.)

(4.) But it is argued that a *ne exeat* will not lie in this case, because the Courts in this State have no jurisdiction over the parties. If so the complainants are unfortunate, as they have no redress anywhere else. (See *Story's conflict of Law, p. 513, and the authorities there cited; 15 Peters' Rep.* 1.) It is suggested, that the State of Alabama has passed an act repealing the doctrine of the common law in this respect, and allowing a foreign trustee to be sued in that State. It may be so; no evidence of the fact has been submitted to this Court.

But suppose it be so. The will having been proven here and letters testamentary issued in this State, where all the parties lived, and where all the property was situated, will the Courts of this State surrender the jurisdiction which they have acquired over the person of this trustee and send the complainants to a foreign power? By no means. No such case has been cited. None such, we presume, can be found. and if such a precedent could be produced, it would be against principle.

The party undertook this trust in view of his accountability to the laws and tribunals of this State. He cannot, by his voluntary removal, transfer his liability elsewhere. The farthest that the Courts have gone is, that where foreigners meet in another State, of which neither are citizens, and un-

dertake to enforce, by writ of *ne exeat*, a contract which was made with a view to its execution elsewhere, there they will be remitted to the place of its execution, for their remedy. (3 *Johns. Ch. Rep.* 74.) But this is not that case. On the contrary, this very authority in Johnson sustains fully the defendants in error, in the present proceeding.

[5.] It is not necessary either in a case like this, for the bill to allege that the complainants apprehend loss, although this is done; it is enough that it is distinctly stated in connection with the other facts, that the defendant resides out of the State. Danger of loss will be inferred from this fact. Still the jurisdiction does not rest upon that ground, but upon all the circumstances to which I have heretofore adverted.

We hold that the Court was clearly right in refusing to discharge the writ of *ne exeat*.

Judgment affirmed.