## LAMAR *v.* LAMAR.

A writ of ne exeat may be granted in this State at the instance of a wife against her husband, pending an application for alimony, and prior to any decree therefor. The court, in determining the amount of bond to be required, will exercise a sound discretion under the special circumstances of the case, having due regard to the rank of the parties and the property of the husband, so as to prevent oppression or extortion.

Submitted June 28, — Decided August 4, 1905.

Ne exeat. Before Judge Pendleton. Fulton superior court. May 25, 1905.

L. L. Lamar brought suit against her husband, Rufus Lamar, for permanent alimony, and made application for temporary alimony. She also prayed the superior court for a writ of ne exeat, alleging that her husband was receiving a good income from his labor, amounting to about twenty dollars per month; that he had abandoned her by forcing her to leave his place of residence without cause; that she was without means of support; and that he was preparing and threatening to leave the State to avoid supporting her and their minor child. The application was duly verified, and the writ issued under the order of the judge. A motion was made to dismiss it, which was refused, and the defendant excepted.

*Winfield Jones*, for plaintiff in error. *S. C. Crane*, contra.

LUMPKIN, J. Under the English practice the writ of ne exeat regno was a prerogative writ which issued to prevent a person from leaving the realm. In America it has been treated, not as a prerogative writ, but as a writ of right in the cases in which it is properly grantable. In regard to alimony the practice of granting the writ has sometimes been said to have arisen from compassion, and because the ecclesiastical courts could not take bail. But the truer ground on which equitable interference arose would seem to be, that, although alimony was not strictly an equitable debt, yet the ecclesiastical courts were unable to furnish a complete remedy to enforce the duty of payment thereof; and therefore courts of equity ought to interfere to prevent the decree from being defeated by fraud. 2 Story's Eq. Jur. (13th ed.) §§ 1465, 1469, 1471, 1472. As to whether the writ will be issued in cases of alimony until after alimony has been decreed, there has been some diversity of opinion. In New York, where the jurisdiction as to divorce and alimony was vested in the court of chancery, it was held by Chancellor Kent that he would pendente lite grant the writ of ne exeat republica against the husband, upon proper application. Denton *v.* Denton, 1 John. Ch. 364, 441. On the other hand, in Michigan, it was held that this would not be done. Bailey *v.* Cadwell, 51 Mich. 217. In 1813 an act of the legislature was passed in this State, which, among other things, declared that " The judges of the superior courts shall, and they are hereby authorized to grant writs of ne exeat, as well in cases where the debt or demand is not actually due, but exists fairly and bona fide in expectancy at the time of making application, as in cases where the demand is due." Cobb's Dig. 525. In *McGee* v. *McGee*, 8 *Ga.* 295, it was held: " A writ of ne exeat may be granted in this State, prior to any decree for alimony. The court, in marking the writ, will exercise a sound discretion, under the special circumstances of the case, — having due regard to the rank of the parties and the property of the husband, so as to prevent oppression or extortion." This decision cited approvingly, and to a considerable extent followed, the decision of Chancellor Kent in Denton *v.* Denton, supra; so that this court at an early date appears to have adopted this view rather than that since announced by the Supreme Court of Michigan. The fact that the amount of ali-

mony had not been fixed by decree was not considered an insuperable objection, as the court could use a sound discretion in fixing the bond, or "marking the writ."

In *McGee* v. *Polk*, 24 *Ga.* 406, 411, it was said: "In bills for account and administration of assets, no certain balance need be sworn to, to entitle the complainants to the writ of ne exeat. It is sufficient if there is a clear affidavit of assets received." When the laws of this State were first codified in 1863, the grounds for the writ were stated in section 3147. It declared that "The writ of ne exeat issues to restrain a person from leaving the jurisdiction of the State, and may be granted in the following cases: 1. At the instance of a creditor whose debt is not due, or where, from some other cause, the ordinary process is not available or sufficient against his debtor, or against a third person secondarily or otherwise under any circumstances chargeable with the debt;" after which follow several other grounds for the issuance of the writ. Subsection 1, just quoted, was carried forward into the Code of 1868, where it formed a part of section 3159. In the Code of 1873 the grounds for the issuance of the writ are stated in section 3226. In that section item 1 of section 3159 of the previous code was omitted by the codifiers, on the ground that by the constitution of 1868 (article 1, par. 18) it was declared that there should be no imprisonment for debt. And this constitutional declaration has been continued in the constitution of 1877 (article 1, sec. 21). This provision unquestionably prevents imprisonment for a mere ordinary debt, and the writ of ne exeat can not be used for that purpose. But alimony does not rank as a mere debt. A husband can be directed to pay alimony, and for a failure or refusal to comply with the order he may be imprisoned; and this has been held not to conflict with the constitutional provision above cited. *Carlton* v. *Carlton*, 44 *Ga.* 216; *Lewis* v. *Lewis*, 80 *Ga.* 706. The striking of the first item of this section of the Code of 1863, referring to the writ of ne exeat, did not have the effect to restore the English rule that the claim must be due or reduced to judgment, if the case were one where the writ was properly grantable, and if that rule applied to alimony.

The question involved in the present case, however, is not left dependent upon reasoning or construction, but is practically de-

cided in the case of *Gibson* v. *Patterson*, 75 *Ga.* 549, where it was said: "Where a bill was filed in aid of a libel for divorce, and the principal purpose of it was to secure the wife's alimony, with proper allegations and proof, the chancellor would have authority to order the arrest of the defendant, and to require him to give bond and security for his compliance with any order that he might grant in the divorce case then pending, for the payment of alimony to his wife." In 1870 an act was passed which authorized a suit for alimony in cases where the husband and wife were living separately or were in a bona fide state of separation, and no action for divorce was pending. The proceeding provided for in this act was an equitable one, and authorized the judge to grant such order as he might grant if the application were based on a pending libel for divorce, "to be enforced in the same manner, together with any other remedy applicable in a court of equity." Acts 1870, p. 413; Civil Code, § 2467. An application for temporary alimony under this section is. to be based on an application for permanent alimony. *Yeomans* v. *Yeomans*, 77 *Ga.* 124. The rulings in regard to alimony pending divorce, and the issuing of a writ of ne exeat, apply as well to this case as to one where an application for divorce is pending.

*Judgment affirmed. All the Justices concur, except Simmons, C. J., absent.*