# CASES

## DECIDED IN THE

# SUPREME COURT OF GEORGIA

### AT THE

## MARCH TERM, 1912

---

### CARNES *v.* CARNES.

1. There was no abuse of discretion in granting temporary alimony and attorney's fees, under the facts in this case.

   (a) The mere fact that the defendant files a plea to the jurisdiction, and the evidence on that subject is conflicting, does not prevent the presiding judge from granting temporary alimony and attorney's fees until the final trial.

   (b) On the hearing of an application for temporary alimony, the presiding judge may award reasonable attorney's fees, in view of the nature and character of the case, although there may be no direct evidence introduced as to the value of the services rendered or to be rendered.

2. On an application for the writ of ne exeat, filed by a wife who is seeking to obtain alimony from her husband, where no removal of property is involved, but only the prevention of the husband from going beyond the limits of the State, it is error to order the writ to issue and the defendant to be imprisoned unless he shall give bond "not to remove beyond the jurisdictional limits of the State of Georgia, and conditioned to pay any judgment that may be found against him in favor of the plaintiff."

3. If a wife, who was seeking alimony against her husband, and who had embodied in the petition therefor an application for the writ of ne exeat against him, telephoned to a notary public that she was swearing to a petition for alimony and that her attorney would carry it to the notary for his signature, and he answered "all right," and if subsequently the paper was presented by the attorney to the notary public and he signed the jurat, this did not constitute the making of an affidavit, or the verification of the application for ne exeat required by law.

   (a) Where, upon a proceeding thus sought to be verified, the judge ordered the writ of ne exeat to issue, and the defendant was arrested and gave

1

bond, he could move for a revocation of the order based on such attempted verification.

(b) If the verification or order could be amended, no motion was made for that purpose.

4. Where a wife, in a suit for alimony against her husband, alleged abandonment by him, but did not charge adultery, and he denied the allegations of the petition and alleged that she went to her father's home, and after a time refused to answer his letters or to communicate with him, though he had frequently written to her, and that his conduct had been exemplary, on an interlocutory hearing of the application for temporary alimony there was no error in admitting in evidence letters found by her in his pocket, written by another woman, and very affectionate in character, over objection on the ground that they were of a licentious character, that they were offered and were intended to show that the defendant had been guilty of adultery, and that they could not be admitted in evidence on the affidavit of the wife as to their finding.

5. Where the presiding judge heard together the application for temporary alimony and the motion to revoke the order for the writ of ne exeat, and announced that he would hear the evidence at once as a matter of time-saving, and at the close entered an order granting alimony but not revoking the grant of the writ of ne exeat, and there was nothing to indicate that he intended to consider that subject further or to withhold judgment in regard to it, this amounted to a refusal to grant the motion, and authorized an exception based thereon.

APRIL 9, 1912.

Application for temporary alimony, etc. Before Judge Freeman. Carroll superior court. September 11, 1911.

Mrs. Bernice Carnes filed her petition to the superior court of Carroll county, alleging, that her husband was of said county, and that he had abandoned her, and was residing apart from her and failing and refusing to contribute anything toward the support of her and their two children born before the separation; that since the separation he had concealed himself from her for the purpose of avoiding contributing to the support of herself and children; that he was a professional baseball player, earning a good salary; that she had only recently located him in the State of Michigan; and that he was temporarily in Carroll county, but threatening to go beyond the limits of the State. She prayed for permanent and temporary alimony, and attorney's fees, and that the writ of ne exeat issue. Upon presentation of the petition, which appeared to be regularly verified, the presiding judge ordered that the defendant should give bond and security, in the sum of $2,000, not to remove beyond the limits of the State, "and conditioned to pay any judgment that may be found against him in favor of the plain-

tiff," and that in default thereof the sheriff should arrest the defendant and confine him in jail. The clerk was directed to issue a writ to conform to the order. A rule nisi was also granted, requiring the defendant to show cause why the prayer for temporary alimony and attorney's fees should not be granted. The clerk issued the writ of ne exeat, following the terms of the order. The defendant gave a bond conditioned that "if the said Cleve Carnes, defendant, shall be forthcoming to answer the complainant's complaint, or shall abide by the order and decree of the court, then this bond to be void."

The defendant denied the substantial allegations of the plaintiff's petition. He also filed a motion to set aside the order granting the writ of ne exeat. He alleged, that the bond was excessive; that it appeared from the petition that the defendant was a professional baseball player, and it was necessary for him, in order to make money, to be out of the State; that the requirement that he should give a bond not to remove beyond the jurisdiction, and also conditioned to pay any judgment that might be found against him, was unlawful; and that the petition was not sworn to by the applicant. He also filed a plea to the jurisdiction.

Upon the call of the case for a hearing under the rule nisi, the defendant presented his motion. The court announced that he would hear the evidence in support of the motion and on the main case at the same time, in the interest of time. Evidence was introduced by both parties. The presiding judge passed an order awarding to the plaintiff $37.50 per month as temporary alimony, and $100 on account of attorney's fees. He provided the time and manner in which the payments should be made, but said nothing expressly in regard to the motion of the defendant. The defendant excepted, and assigned error upon the grant of alimony to the plaintiff, upon the overruling of his motion to set aside the order providing for the ne exeat, which resulted, as he contended, from the order which was granted, and upon not sustaining such motion on each ground thereof and dismissing the writ of ne exeat and dissolving the bond.

S. *Holderness* and J. M. *Moore,* for plaintiff in error.

J. O. *Newell* and C. E. *Roop,* contra.

LUMPKIN, J. (After stating the foregoing facts.)

1. Temporary alimony, pending a suit for permanent alimony,

was granted to the wife, and the husband excepted. The evidence was sufficient to sustain the judgment. The husband filed a plea to the jurisdiction, but the evidence on that subject, as on others, was in conflict, and his mere insistence that the court was without jurisdiction did not prevent the presiding judge from granting temporary alimony to the wife until, on final trial, the question could be ultimately tested. The awarding of a reasonable attorney's fee to the plaintiff was also proper. She needed counsel for the very purpose of contesting this plea and the contentions of the defendant. This is so, although there may have been no direct evidence as to the value of the services rendered or to be rendered. *Sweat* v. *Sweat,* 123 *Ga.* 801 (52 S. E. 716).

2. The defendant made a motion to set aside the order granting the writ of ne exeat. One ground of the motion was that the order required the defendant to give a bond with a condition different from that required by law, or, in default thereof, to be imprisoned. The Civil Code (1910), § 5461, declares that "The defendant may, in all cases, relieve himself or his property, or the specific property, from the restraint imposed, by giving bond in double the value of plaintiff's claim, with good security, to the officer serving the process, for the forthcoming of each or either (according to the tenor of the writ), to answer to complainant's claim, or abide by the order and decree of the court. The judge granting the writ may, in his discretion, require a larger bond." Sometimes the writ is issued only to restrain a person from leaving the jurisdiction of the State; sometimes it is issued against a person who is removing or attempting to remove property beyond the jurisdiction. The bond which may be required is to be shaped in accordance with the nature of the proceeding. If the application for the issuance of the writ of ne exeat is made in connection with an application for alimony, and no removal of property is involved, but merely an intended leaving of the State by the defendant, the judge ought not to require a bond conditioned both that the defendant will not remove beyond the jurisdictional limits of the State and also that he will pay any judgment that may be found against him in favor of the plaintiff. This would not only require the husband to give security that he would remain in the jurisdiction, but also that he would be solvent and pay the money judgment. *McGee* v. *McGee,* 8 *Ga.* 295 (52 Am. D. 407);

*Lamar* v. *Lamar,* 123 *Ga.* 827 (51 S. E. 763, 107 Am. St. R. 169, 3 Ann. Cas. 294). In the present case, upon presentation of the petition the presiding judge passed an order requiring the defendant to give bond "not to remove beyond the jurisdictional limits of the State of Georgia, and conditioned to pay any judgment that may be found against him in favor of the plaintiff," or, in default thereof, to be imprisoned. The writ issued by the clerk followed the terms of the order. In the brief of counsel for defendant in error it was conceded that the order should not have been in the conjunctive; but it was urged that the bond which was actually given and accepted by the sheriff was conditioned to be void if the defendant "shall be forthcoming to answer the complainant's complaint, or shall abide by the order and decree of the court," and that this relieved the error or inadvertence in the terms of the order and of the writ. Upon a motion to set aside an erroneous order for the writ, the fact that the bond did not strictly follow the order or the writ did not serve to correct the order as it stood. Nor was there any motion to correct it.

3. A writ of ne exeat is a summary proceeding. It issues ex parte, and the person of the defendant is seized and he is incarcerated unless he gives the bond required. "In every application for a writ of ne exeat, the allegations of the bill must be verified by one or more of the complainants." Civil Code (1910), § 5463. The law does not provide for a preliminary hearing before the writ issues. The defendant's only method of relieving himself from custody is by complying with the requirement as to bond, or by moving the judge for a revocation or modification of the order, or perhaps by demurrer to the petition embodying this prayer with others. It is therefore of importance that the petition should be verified before the order is granted. *Wallace* v. *Duncan,* 13 *Ga.* 41; *Moore* v. *Gleaton,* 23 *Ga.* 142; *Holliday* v. *Riodan,* 25 *Ga.* 629. The point that there is a lack of proper verification can be made by the principal. If he fails to do so, the sureties can not set up want of verification in a suit on the bond. *Blue* v. *Sheppard,* 28 *Ga.* 566; *Bryan* v. *Ponder,* 23 *Ga.* 480.

In the present case, the petition had annexed to it what purported to be an affidavit of the plaintiff, with a jurat signed by a notary public and ex-officio justice of the peace. But the uncontradicted evidence showed that in fact the affidavit had not been

sworn to as required by law. The plaintiff and one of her attorneys made oath that she called up the notary over the telephone, and told him she was swearing to a petition for alimony against her husband, and that the attorney would bring it to the notary for his signature; and that he said, "All right." The attorney further made affidavit that he carried the paper to the notary and told him that it was such, and the notary answered, "Yes, she called me and told me she was swearing to same." The notary made affidavit that the plaintiff called him up by telephone and said she had just "signed a paper" in the case of herself against her husband for alimony, ne exeat, etc., and wanted him "to sign the same as a witness for her," and that her attorney would bring it to him to sign, and that the attorney brought the paper and the notary signed it without ever seeing the plaintiff about the matter. If the evidence of the notary be taken as correct, there was not the slightest effort to administer an oath, but a mere statement over a telephone wire that the plaintiff had signed a paper, and desired the notary to sign as a witness. If the testimony of the plaintiff and her attorney be taken as correct, there was still no legal making of an affidavit. In order to make an affidavit, there must be present the officer, the affiant, and the paper, and there must be something done which amounts to the administration of an oath. There must be some solemnity, not mere telephone talk. Long-distance swearing is not permissible. Telephonic affidavits are unknown to the law. A moment's thought will show a sound reason for this. An officer hears a voice coming through the receiver of a telephone. For identification he must rely on recognition of the voice (if he knows it) and the statement of the person as to who he or she is. Reference is made to some paper, more or less fully described. Later a third person presents to the notary a paper as being the one sworn to. How does the notary know, except by hearsay, that the paper presented is the identical paper mentioned? If this is an oath, when is it taken,—when the telephone message is sent, or when the paper is later presented by the third person? Where is it taken,—at the place where the affiant is, or that where the officer is? Suppose they should be in different counties, where would be the jurisdiction of a prosecution for perjury, if the oath were untrue? It will be seen that great confusion might easily arise from such a system. *Britt* v. *Davis,* 130

*Ga.* 74 (*60 S. E.* 180); *Mitchell* v. *Masury,* 132 *Ga.* 360(8) (64 S. E. 275).

It was contended that if there was a defect in the verification it was curable by amendment. On the hearing of the motion and of the application for temporary alimony the plaintiff testified by affidavit, among other things, that "she now swears that the allegations then made are true." But, if the absence of verification was curable, testifying at the hearing of the alimony proceedings that certain things were true did not amount to an amendment of the affidavit on which the writ of ne exeat was based.

4. The plaintiff charged abandonment by her husband. There was no charge of adultery. He alleged exemplary conduct on his part, and that she went to her father's home, and after a time refused to answer his letters. She testified that she found in his pocket certain letters. They were from another woman, and were of a very affectionate character. They were not inadmissible on the ground that they were licentious in character and intended to show that the defendant was guilty of adultery, and that they could not be admitted in evidence on the affidavit of the wife as to the finding of them.

5. It was suggested in the brief of counsel for the defendant in error that the order of the court affirmatively passed on the application for alimony, but did not in terms deny the motion to revoke the order granting the writ of ne exeat. But both were heard together. The court announced that he would hear evidence in support of the motion, and on the main case at the same time, "in the interest of time." After hearing evidence as to both, he granted one and did not grant the other. In signing the bill of exceptions, he gave no indication that he intended to withhold judgment on the motion, or consider it further. The bill of exceptions contained various assignments of error, based on the fact that the court erred in not dismissing the writ; and the judge certified such bill of exceptions. We think it evident that he did intentionally decline to pass the order for which the motion was made, and that the exception thereto can be properly considered.

Further than as above declared, there is no merit in any of the assignments of error. Having obtained a reversal in part, the plaintiff in error is entitled to costs of the exception.

*Judgment affirmed in part and reversed in part. All the Justices concur.*