## LOMAX *v.* LOMAX.

No. 9084.   February 25, 1933.

*R. Douglas Feagin,* for plaintiff in error.

*Brock, Sparks & Russell,* contra.

RUSSELL, C. J. The defendant in error, the former wife of the plaintiff in error, filed a petition praying that he be attached for contempt, and that he be restrained by the writ of ne exeat from leaving the jurisdiction of this State. Upon this application the judge ordered: "The petition in the above case of Mrs. Regis Lomax against J. H. Lomax being presented to me, and after consideration thereof, it is ordered that the defendant, J. H. Lomax, show cause before me at my office in Bibb superior court-house on the 3rd day of April, 1931, at ten o'clock a. m., why the prayers of the petition should not be had and allowed, and why he should not be adjudged in contempt of court. It is further ordered that the writ of ne exeat issue, and that in default of a bond by the defendant not to remove beyond the jurisdictional limits of this State and to be in court when required by its order to answer the judgment therein, that in such case he be committed to the common jail of said county, there to be safely and securely kept by the sheriff without bail. It is further ordered that the bond of the said J. H. Lomax is fixed at the sum of $1500 until the further order of this court." It does not appear that the hearing set for April 3, 1931, was ever held; but on April 7, 1931, the defendant gave bond in the sum of $1500, "conditioned as follows: If the said J. H. Lomax, defendant, shall be forthcoming to answer to the complainant's claim, or shall abide by the order and decree of the court, then this bond to be void, else of full force and virtue." The remainder of the instrument relates only to a renunciation of homestead and exemption, and recites that neither the principal nor surety in the bond has ever taken any homestead or exemption under the laws of the State, the United States, or elsewhere. On September 11, 1931, Lomax, in defense to this proceeding, filed what he denominated as a "plea to the jurisdiction, motion to vacate service of defendant of the rule nisi, and motion to vacate the order allowing the writ of ne exeat to issue, and fixing bond, and motion to discharge and cancel the bond given in said case." He alleged that at the time he was served with the plaintiff's petition he was confined in Bibb County jail after having been arrested in the State of Tennessee

under an indictment of Bibb superior court, charging him with the crime of abandonment of a minor child, and was being held involuntarily, and that this service therefore was illegal, null and void, as petitioner (defendant) was present in Georgia against his will. It is alleged that "said writ of ne exeat was issued improvidently and without authority in law; for that said ne exeat did not issue prior to the final decree in said divorce case, but subsequently thereto, and there is no provision of law in Georgia for the issuance of a ne exeat proceeding in support of an alimony or divorce proceeding after said final verdict and decree in the divorce suit." He prayed that the sheriff and deputy sheriff who served him be made parties defendant, that the entry of service be vacated, and that a final judgment be entered in said contempt proceeding, decreeing that the superior court of Bibb County is without jurisdiction to proceed in the case, that the writ of ne exeat be discharged, the bondsman in said case be relieved from all further liability, and the bond be canceled. To quote from the bill of exceptions: "On the trial of the case . . no evidence was introduced, but the case was tried on pleadings and on an agreed statement of facts. It was agreed that J. H. Lomax was a non-resident of the State of Georgia residing in Pennsylvania. . . It was also agreed that at the time J. H. Lomax was served in the contempt proceedings and in the ne exeat proceedings on March 26th, 1931, . . he was confined in Bibb County jail on an indictment of Bibb superior court, charging him with abandonment of his minor child, and that he was arrested in Tennessee," and that upon proper requisition papers he was brought into Georgia involuntarily and against his will, and was lodged and was being held a prisoner in Bibb County jail on the criminal when service was made on him of the contempt proceedings and the ne exeat proceedings.

The court overruled the motion to set aside the return of service in the attachment for contempt, and to dismiss the writ of ne exeat, and to discharge the bond therein. J. H. Lomax excepted.

Two questions are presented to us for adjudication. Either of them is determinative of the case. The first question (considered in point of the priority of their occurrence in the progress of the litigation) is whether legal service of process in a civil proceeding can be had upon a non-resident, citizen of Pennsylvania, who has been brought by force against his will from beyond the limits of this

State and from beyond the jurisdiction of this State for the sole purpose of prosecuting the non-resident for a crime. In *Rogers* v. *Rogers,* 138 *Ga.* 803 (76 S. E. 48), it was said that a non-resident of the State, voluntarily attending upon a city court to answer to an accusation for a misdemeanor against him, is not privileged from arrest under civil process nor exempt from service of civil process upon him. From the conclusion of the opinion, as well as the head-note, it is plain that the ruling applies only to the voluntary appearance of a non-resident who is charged with crime, and therefore that the ruling is not only inapplicable to a case where (as in the case at bar) it is admitted that the appearance of the defendant in the criminal case was obtained by extradition and is therefore involuntary, but on the contrary it tends to support the contention of the plaintiff in error. In the *Rogers* case, the court, after quoting the Civil Code. (1910), § 2172, "The jurisdiction of this State and its laws extends to all persons while within its limits, whether as citizens, denizens, or temporary sojourners," cited the familiar principle which had its origin in the decision of *Murphy* v. *Winter,* 18 *Ga.* 690, relating only to voluntary presence : "A citizen of another State, passing through this State, may be sued in any county thereof in which he may happen to be at the time when served." Civil Code (1910), § 5531. The opinion concluded by saying: "The defendant voluntarily appeared to defend the criminal charge against himself, and he is liable to suit as others are, and must answer thereto in like manner." So it is plain from the decision in *Rogers* v. *Rogers* that the court was dealing only with a case where the defendant in a criminal case *voluntarily* appeared to defend the criminal charge. It would seem, e converso, that one who did not voluntarily appear, but was forced into the State, would not be liable to suit. The facts in the present case are exactly the reverse of those in the *Rogers* case. We have not been able to find a case in which the exact question now before us has been specifically adjudicated; nor are the facts in any of the cases heretofore decided by this court the same as are set forth in the present record. But in *Henegar* v. *Spangler,* 29 *Ga.* 217, which has not been overruled or even criticised since its rendition by a full bench, it was ruled : "Suitors are exempted from arrest while going to, attending on, or returning from court. Nor does the fact that one of them resides out of the State, and who has had his adversary arrested, under bail process,

previously, justify a departure from the practice." At the time that decision was rendered, as pointed out by Mr. Justice Lumpkin in *Vaughn* v. *Boyd*, 142 *Ga.* 230 (82 S. E. 576, L. R. A. 1915A, 694), in criticising the *Rogers* case, supra, section 5854 of the Civil Code of 1910, reading, "Witnesses are protected from arrest on any civil process while going to or returning from and attending on any court," was included in the act of 1799 (Cobb's Digest, 463), and the court was aware of the provisions of that act. The court no doubt knew that the language of what is now Code § 5854 was included in the judiciary act of 1799, and that it did not in terms apply to parties, and did not refer to parties. And so, in ruling, on a subject not included in the act of 1799 or referred to therein, the court held: "Suitors are exempt from arrest while going to, attending on, or returning from court. Nor does the fact that one of them resides out of the State, and who has had his adversary arrested, under bail process, previously, justify a departure from the practice." The court, in view of the silence of § 5854 as to suitors, properly placed its decision upon the well-recognized principle that the jurisdiction of a State does not extend beyond its territorial limits, and that consequently no personal judgment can be obtained against a non-resident unless he be served, so as to give the court jurisdiction, and that legal service can not be perfected by forcing a non-resident defendant to come within the jurisdiction of the State in order to perfect personal service and thereby obtain jurisdiction. So we are of the opinion that the contention of the plaintiff in error, that the judgment was error in so far as the court refused to set aside the entry of service, is meritorious. The cause is in equity; and it appears from the agreed statement of facts that in as much as the plaintiff had a judgment, she had an adequate legal remedy by suing upon that judgment in the State of the defendant's residence, and obtaining, if necessary, process of garnishment. The judgment, if not void, is at least voidable, when the plaintiff in error proceeded as pointed out in *Thornton* v. *American Writing Machine Co.*, 83 *Ga.* 289 (9 S. E. 679, 20 Am. St. R. 320). It is true that in that case the party was a witness; but if the ruling in the *Henegar* case, supra, is controlling, as we think it is, the same principle which is applied in the *Thornton* case is applicable here. In *King* v. *Phillips*, 70 *Ga.* 409, a case very similar to the case at bar, there was a clear intimation that had the defend-

ant made a timely motion to set aside the service and objected to the jurisdiction of the court before judgment, as the defendant did in the present case, the motion would have been good.

However, if the refusal to set aside the entry of service, thereby holding that the court had jurisdiction of the matter, were correct, we are of the opinion that the court erred in the ruling with regard to the issuance of the writ of ne exeat regno and the refusal to cancel the appearance bond and relieve the surety. This raises the question as to whether under the law of Georgia, as is the case in England, a writ of ne exeat may issue after there has been a final judgment in the cause to which it is applicable. It may be conceded that at the time of the passage of the act of the General Assembly approved February 25, 1784 (Cobb's Digest, 721), declaring that laws and practices theretofore prevailing in England shall be of full force and effect until "repealed, amended, or otherwise altered by the legislature," writs of ne exeat, in conformity to the English common law, were granted *after* a final judgment had been rendered. They were never issued in advance of a judgment. But that provision was only to be of force in Georgia until changed by law. When the provision was changed, the common law of England fell and was superseded by the Georgia statute, which is to be construed by its own terms. Whatever may have been the origin of our present law, it is now a statute of Georgia adopted by the General Assembly by the adoption of the Code. *Central of Georgia Railway Co.* v. *State,* 104 *Ga.* 831 (2) (31 S. E. 531, 42 L. R. A. 518). Sections 5459-5464 of the Code deal with the subject of ne exeat; and as will be seen, all of the five instances stated in § 5459 on which the writ may issue contemplate only action in advance of a final judgment. There is no reference to any right to the issuance of the writ after a final judgment has been obtained. Since the common law permitted the issuance of the writ only after final judgment, and the Georgia law provides for it only in instances which come before a final judgment, it is difficult to perceive how there could be a more complete change or one which would more completely obliterate the antecedent common law upon the subject. Under § 5459 the writ issues "to restrain a person from leaving the jurisdiction of the State, and may be granted in the following cases: 1. In favor of an obligor or promisor or partner, against his co-obligor or joint promisor or copartner equally or partly responsible

with him for any duty *to be performed*." Plainly, this is not to enforce an adjudiction in which it has been adjudged that the duty must be performed. "2. Against persons illegally removing the property of a decedent, or of an orphan, or married woman, at the instance of any person interested therein, or of a next friend of such orphan or married woman." In this provision the writ is not directed to the enforcement of a judgment against one who has removed the property, etc., but is evidently directed to restrain future removal. 3. "At the instance of a remainderman or reversioner, against any one attempting to remove the property in which such remainder or reversion exists, or may contingently exist." Not to restrain a person from leaving the jurisdiction who has attempted, but one who is attempting, to remove, and therefore may remove, the property, etc. 4. "At the instance of a mortgagee against a person holding the equity of redemption." This is not a mortgagee who has foreclosed, since the right is given only against a person holding the equity of redemption. 5. "At the instance of any person interested legally or equitably in property about to be removed, where no adequate remedy is afforded at law." The 5th subsection was added by the act of 1814 (Ga. L. 1814, p. 526), and necessarily this change from the law of England must have been deemed by the legislature to be essential, and thus that law was "repealed, amended, or otherwise changed" as that term is used in the act of 1784. In 1830 (Cobb's Digest, 527), as pointed out in *Wallace* v. *Duncan,* 13 *Ga.* 41, another change was made which was at variance with the common law, and allowed the defendant to give bond for the eventual condemnation-money, which of course was anticipatory of a probable judgment in futuro. This act of 1830 is now § 5461 of the Civil Code of 1910. The controlling cases construing § 5459 are *McGee* v. *McGee,* 8 *Ga.* 295 (52 Am. D. 407) ; *McGehee* v. *Polk,* 24 *Ga.* 406 ; *Lamar* v. *Lamar,* 123 *Ga.* 827 (51 S. E. 763, 107 Am. St. R. 169, 3 Ann. Cas. 294).

The court erred in refusing to cancel the bond given by the defendant in this case, and to discharge the surety. In *May* v. *May,* 146 *Ga.* 521 (91 S. E. 687) , this court held : "The writ of ne exeat issues to restrain a person from leaving the jurisdiction of the State; and where the principal in a ne exeat bond appears and defends the suit against him for divorce and alimony, and is within the jurisdiction of the court when the final judgment is rendered

against him, subject to the processes of the court, such writ becomes functus officio, and upon motion the court should declare the bond canceled and the sureties therein discharged." So far as appears from the record, the principal of the bond was present in court at the time the motion to discharge the sureties was made. In *May v. May,* Mr. Justice Gilbert so fully reviewed the history of the writ of ne exeat republica or regno as to obviate any necessity for citing at this time any of the numerous authorities he cited. He said: "In the instant case the defendant appeared and answered the complaint, and also when a judgment was rendered against him. He thus placed himself in a position where other and final process could be served upon him, and the court could deal with him in any manner that the law authorized. This was what he was obligated to do in his bond; and the bond having discharged all the offices for which it was intended, it should have been canceled as functus officio, and the sureties discharged." As it does not appear that the principal in the bond now before us was in a position where the court could not "deal with him in any manner that the law authorized," the bond in this case had become functus officio.

But even if it could be held that the English rule prevails, by which the writ of ne exeat regno may be granted after a final judgment in a cause, in order to enforce the judgment instead of to restrain an act in futuro and antecedent to any judgment, it appears from the agreed statement of facts in this case that the judge heard no evidence. He passed upon no evidence. It was held in *Fountain v. Tarver,* 150 *Ga.* 628 (104 S. E. 443), that it is presumed that the judge of the superior court acted upon sufficient evidence in ordering the writ to issue. In this case, however, the agreed statement of facts which counsel in open court conceded to be true showed that the judge issued the order for the ne exeat in this case without hearing any evidence at all, and solely on the ex parte petition of the plaintiff. This seems to be error, and perhaps renders the writ void. We have already stated the condition of the bond. This instrument is clearly nothing more than a bond conditioned for the appearance of the defendant at the hearing mentioned, or whenever the application might be taken up. It was not drawn in conformity to the provisions relating to ne exeat; and therefore the answer and cross-action of the defendant should have been sustained upon this ground. *Judgment reversed. All the Justices concur.*