SHAW *et al. v.* JORDAN.

No. 9897. APRIL 11, 1934.

*Paul L. Lindsay,* for plaintiffs in error.  *H. W. McLarty,* contra.

ATKINSON, J.  Mrs. Dossie Jordan instituted an action for divorce against James Allen Jordan, and prayed for temporary and permanent alimony and attorney's fees, and for a ne exeat bond. On December 31, 1930, the court ordered "that ne exeat issue, and defendant give bond in the sum of $200, to appear and defend said action, and abide by the judgment of the court." Two days after the above order was issued, W. E. Shaw and J. B. Jordan signed a bond as security for the husband, conditioned that "if the said J. A. Jordan defendant shall be forthcoming to answer to the complainant's claim, or shall abide by the order and the decree of the court, then this bond to be void: else of full force and virtue." On January 13, 1931, the wife was awarded temporary alimony and attorney's fees, and it was provided in the order "that the writ of ne exeat shall continue to exist as previously agreed." On March 23, 1931, the husband was adjudged to be in contempt for failure to pay alimony. On May 2, 1933, the wife instituted a proceeding against the sureties on the ne exeat bond, alleging that the temporary order was not modified, but was continued in full force until October 8, 1931, when a final decree was granted for permanent alimony until the youngest child arrived at the age of eighteen years; that the husband was in default at the time of the rendition of the final verdict, in the sum of $278 temporary alimony and $40 attorney's fees; that immediately after the rendition of the judgment for temporary alimony, or within a few days thereafter (on or about March 1, 1931), he absconded from the State and went to Florida, where he remained three or four months, and thereafter went to Fort Worth, Texas, where he remained for one and a half years; that he did not abide by the orders of this court nor did he remain within the jurisdiction of the court, and the bond given to assure his obedience to the commands of this court by abiding in the jurisdiction had wholly failed, and the sureties thereon were liable.

The defendants filed an answer alleging that the bond was not a condemnation-money bond, but was an appearance bond; that the principal had been produced and was in the custody of the sheriff of Fulton County at the time this proceeding was filed; and that he

is produced in accordance with the terms of the bond and forthcoming to answer to and abide by the further order and decree of court. The answer contained a prayer that the bond be judicially declared functus officio, and that the plaintiff be not allowed to have judgment against the respondents in any sum, and that the sureties be discharged.

At the trial it was admitted by counsel for defendants that more than two hundred dollars temporary alimony and attorney's fees were due on the date of the final decree. J. A. Jordan testified: "I was served with the suit for divorce and gave bond on or about the 2d day of January, 1931, and I remained in the jurisdiction of the court until sometime in March, 1931, at which time I went to the State of Florida, and thereafter in the same year went to the State of Texas, and remained until the spring of 1933. I was not in the State of Georgia after the month of March, 1931, and I was in Texas on the 8th day of October, 1931, when the final decree for alimony and divorce was granted, and I have not paid alimony due, either temporary or permanent, with the exception of thirty-two dollars which was paid in January or February, 1931. I was not in the State of Georgia after March, 1931, until the early spring of 1933." W. E. Shaw and J. B. Jordan, securities, testified that they signed said bond, and that J. A. Jordan had appeared at the hearing for temporary alimony; that the securities had never been called on, until the spring of 1933, to answer in default on breach of said bond; that they were ready and had been ready to deliver said principal and could have delivered him to the court on a demand within thirty-six hours; that J. A. Jordan, about April, 1933, a few days before the rule nisi was issued, returned to Georgia, and was within the jurisdiction of the court and had surrendered himself to the sheriff of Fulton County, and was in jail on a judgment for contempt for failure to pay the alimony, at the time the rule nisi issued against the securities.

The court entered an order denying the sureties' motion for an order declaring said bond functus officio, and entered judgment against them in the penal sum of said bond. The defendants excepted.

"The writ of ne exeat issues to restrain a person from leaving the jurisdiction of the State." Civil Code, § 5459. "The defendant may, in all cases, relieve himself or his property, or the specific

property, from the restraint imposed, by giving bond in double the value of the plaintiff's claim, with good security, to the officer serving the process, for the forthcoming of each or either (according to the tenor of the writ), to answer to complainant's claim, or abide by the order and decree of the court." § 5461. In a suit for divorce and alimony in which there was a prayer for the writ of ne exeat, a bond was executed, the condition of which was: "If the said J. A. Jordan defendant shall be forthcoming to answer to the complainant's claim, or shall abide by the order and the decree of the court, then this bond to be void; else of full force and virtue." Where the principal in such bond is 'without the jurisdiction of the State when final judgment is rendered against him, but he appears and voluntarily surrenders himself to the sheriff, and where at the time the wife seeks to have the bond declared forfeited he is not only within the jurisdiction of the court but also is incarcerated in the county jail, he having been adjudged in contempt for failure to pay alimony, the condition to "abide by the order and the decree of the court" is satisfied and the ne exeat writ becomes functus officio. The trial court erred in denying the sureties' motion for an order declaring said bond functus officio, and in entering judgment against them in the penal sum of the bond. See *Carnes* v. *Carnes,* 138 *Ga.* 1 (2) (74 S. E. 785) ; *LeSueur* v. *Pounds,* 139 *Ga.* 470 (77 S. E. 629) ; *Freeman* v. *Freeman,* 143 *Ga.* 788 (2) (85 S. E. 1038) ; *Roberts* v. *Roberts,* 176 *Ga.* 672 (168 S. E. 867), and cit.; *Matthews* v. *Matthews,* 177 *Ga.* 412 (2) (170 S. E. 250) ; *Lomax* v. *Lomax,* 176 *Ga.* 605 (168 S. E. 863). The instant case differs on its facts from *Jackson* v. *Johnson,* 164 *Ga.* 839 (139 S. E. 663), where the principal in the surety bond was a non-resident and "immediately after the defendant's release from the sheriff's office . . he left the State of Georgia, and since said time has not returned, and his whereabouts have been unknown ;" and from *Pepper* v. *Pepper,* 169 *Ga.* 832 (152 S. E. 103), where the order granting the writ provided that the defendant should give bond conditioned upon his remaining within the State until further order of the court; and from *Alexander* v. *Slear,* 177 *Ga.* 101 (169 S. E. 304), where the defendant was surrendered before final verdict but subsequently was released, and where the order releasing the principal from jail provided that the obligation of himself and his sureties should not

be affected, and where his whereabouts were not known at the time the bond was forfeited.

*Judgment reversed.    All the Justices concur.*