*R. H. Ferrell* and *Claude Payton,* for defendant.

---

MYERS, administrator, *v.* WARRENFELLS, administratrix.

1. Where a vendee buys land, taking bond for title from the vendor, and giving for the purchase-money his notes bearing an usurious rate of interest, in pursuance of the contract of purchase, where the vendee is to pay such usurious rate of interest, the title of the vendor, not acquired from the vendee but from a third person, is not void under a statute, of force at the time, declaring void all titles to property, made as a part of an usurious contract or to evade the laws against usury. *Pope* v. *Heartwell*, 79 *Ga.* 482 (5 S. E. 487); *Dotterer* v. *Freeman*, 88 *Ga.* 479 (2), 496 (14 S. E. 863); *Long* v. *Gresham*, 148 *Ga.* 170 (96 S. E. 211).

2. The trial court did not err in rejecting certain receipts given by the vendor to the vendee for certain sums of money, the receipts themselves not reciting that the money was received as payments on the purchase-money of the land sold by the vendor to the vendee, and there being no aliunde evidence to show that such moneys were paid on such purchase-money; such receipts being offered by the administrator of the vendee to show payments for such purpose.

3. The claimant having died, and his administratrix having been made a party in his stead, the attorney at law of the opposite party was an incompetent witness to testify to a conversation with the deceased claimant pending his employment, touching the payment by the vendee of the purchase-money of the premises in dispute. Civil Code, § 5858 (5).

4. The fact, that notes given by a vendee to a vendor for the purchase-money of land have become barred does not extinguish the title of the vendor; and the latter can, although the purchase-money notes are barred, assert his title by claim to the land, when advertised for sale by the administrator of the vendee, under an order of the court of ordinary, as the property of the vendee, until the purchase-money is paid in full. *Reid* v. *Flippen*, 47 *Ga.* 273; *Elkins* v. *Edwards*, 8 *Ga.* 325; *Shipp* v. *Davis*, 78 *Ga.* 201 (5), 209 (2 S. E. 549); *Allen* v. *Glenn*, 87 *Ga.* 415 (13 S. E. 565); *Duke* v. *Story*, 116 *Ga.* 388, 391 (42 S. E. 722); *Shumate* v. *McLendon*, 120 *Ga.* 396 (7) (48 S. E. 10); *Moughon* v. *Masterson*, 140 *Ga.* 699 (3) (79 S. E. 561); Civil Code, § 3268.

5. The court erred in directing a verdict for the claimant; and the judgment is reversed with direction that on the next trial, under proper amendment to the pleadings, the verdict and decree be so molded as to give effect to all the equitable rights of the parties.

No. 2942. JUNE 16, 1922.

Claim. Before Judge Wright. Walker superior court. November 10, 1921.

W. W. S. Myers, as administrator of B. F. Ellsberry, obtained from the court of ordinary of Walker county an order for the sale of eighty acres of the north half of lot of land No. 281 in the 22d district, 3d section of Walker county, Georgia, as the property of the estate of B. F. Ellsberry; and he advertised the same for sale in pursuance of said order. On October 2, 1917, J. W. Cavender filed a claim thereto. On November 5, 1920, this claim came on to be heard in the superior court of said county. It was admitted in open court that B. F. Ellsberry held under J. W. Cavender. The claimant having died, his administratrix, Minnie Warrenfells, was made a party in his stead. The claimant introduced the following evidence: Deed dated May 9, 1884, from Susan Hunt to the claimant, embracing the premises in dispute. Here the plaintiff rested. It was agreed by the claimant in open court that the administrator of Ellsberry had regularly obtained leave to sell this land, and was regularly proceeding to sell it under the law.

W. W. S. Myers, for his intestate, testified, that he was the acting administrator of B. F. Ellsberry. He found several papers and a lot of receipts among the papers of the intestate, after he was appointed administrator. Among these was a bond for title from J. W. Cavender to B. F. Ellsberry, these two-hundred-dollar notes, and one $100 note signed by B. F. Ellsberry and payable to the claimant. These papers were introduced in evidence. The

bond for title from J. W. Cavender to B. F. Ellsberry was dated January 14, 1885. Under it J. W. Cavender bound himself, in the penal sum of $700, to convey to B. F. Ellsberry the premises in dispute upon the payment by the latter of his notes, one due January 15, 1885, for $221.50, with ten per cent. interest from date, and two notes due December 25, 1885, for $100 each, with interest from September, 1885, at ten per cent., and dated January 14, 1885. This bond for title was recorded November 4, 1920.

The administrator of B. F. Ellsberry introduced, as coming from the possession of the latter, the following notes: Two notes dated September 11, 1883, payable the 25th day of December, 1885, to N. A. Keown or order, each for the sum of $100, for part of lot of land No. 291, 26th district, 3d section of Walker county, with interest from date at ten per cent. per annum, and made by B. F. Ellsberry; which notes were transferred to J. W. Cavender on April 20, 1894. Another note, dated January 14, 1885, payable by December 25th after date, to J. W. Cavender or order, for $100, for part of lot of land No. 281, 26th district and 3d section, with interest from September 11, 1883, at ten per cent. per annum. On this note were the following credits: $100, December 29, 1888; $100, undated; February 1, 1890, $50; cash $8.80; 5 gallons of syrup $1.50; barrel of syrup $1; cash $6.30.

Frank Ellsberry, for the administrator of Ellsberry, testified as follows: I knew J. W. Cavender and B. F. Ellsberry in their lifetimes. At one time I saw Mr. Ellsberry pay Mr. Cavender $100 in money. He did not take a receipt for it. It was paid in five twenty-dollar gold pieces. Mr. Cavender claimed that he did not have any receipt then, that he would give it to him later. This was somewhere between 1895 and 1898. It was at Mr. Ellsberry's house, in front of his gate. Cross-examination: I am a grandson of B. F. Ellsberry. I am not one of his heirs at law. My father is living. Don't know whether he ever got a receipt or not. Don't know what he paid that hundred dollars for; suppose it was to go on land.

G. W. Smith, for the administrator of Ellsberry, testified: Was acquainted with B. F. Ellsberry and J. W. Cavender in their lifetimes. Heard Cavender state about a hundred dollars that Mr. Ellsberry paid him. Don't know how long it has been; don't

remember when it was; it was twenty-odd years ago.  He never said whether he gave him a receipt for it or not.  Cross-examination: Mr. Cavender told me he came by there one Sunday night and Uncle Ben Ellsberry paid him $100 in gold.  Me and Mr. Cavender had a little talk about it.  He did not know whether it was gold or what it was.  Said he knew he paid him, though.  He did not say what he paid him that money for.  Mr. Cavender was running a store there at Villanow.  Don't know that Mr. Ellsberry traded there.  Was not related to Mr. Ellsberry in any way, except I married his niece.

W. E. Ellsberry, for the administrator of Ellsberry, testified: B. F. Ellsberry was my father.  After his death I examined in his house to find his papers, and found those papers there, which Mr. Myers got.  Found these receipts and papers that have been put in evidence.  I remember about the two notes payable by my father to Mr. Keown and transferred by Mr. Keown to Mr. Cavender, the two notes now in evidence.  They were among my father's papers in his trunk.

The administrator of Ellsberry introduced a receipt given by J. W. Cavender to B. F. Ellsberry for $100 to be credited on note dated November 15, 1889.  He likewise introduced another receipt for $50, given by J. W. Cavender to B. F. Ellsberry for $50 dated November 24, 1891.  Here the administrator of Ellsberry rested.

The claimant introduced in evidence a note for $221.50, dated January 14, 1885, payable one day after date to J. W. Cavender or order, for part of lot of land No. 281 in the 23d district, 3d section of Walker county, Georgia, and signed by B. F. Ellsberry. On this note were the following credits: $10 April 3, 1886, November 24, 1891, January 18, 1896, $5, December 15, 1904, 425 pounds cotton at 10 cents, $42.50, December 17, 1900, $17. The claimant introduced another note for $221.50, dated January 4, 1885, and payable one day after date, to J. W. Cavender or order, for part of lot of land No. 281 in 26th district and 3d section of Walker county, Georgia, at ten per cent. interest from date.  On this note there were these credits: $50, December 23, 1886; $50, December 18, 1890; $50, December 16, 1893.  The claimant introduced a bond for title from N. A. Keown to Benjamin F. Ellsberry, dated September 11, 1883, by which Keown obligated to convey to said B. F. Ellsberry the premises in dis-

pute on payment by Ellsberry of the following notes: One for $100, dated September 11, '83, and due December 25, 1883, without interest; and three notes for $100 each, with interest from September 1, 1883, at eight per cent. from date, and due December 25, 1884; and three notes for $100 each, dated September 11, '83, with interest from date at ten per cent., and due December 25, 1885.

The claimant thereupon moved the court to direct a verdict for him, because the proof showed, uncontradictedly, that the defendant had never paid for this land, was not entitled to any deed, was not entitled to the possession of the land until he paid the purchase-money; and that he could not sell the land until he had first recovered it and had the title vested in him. The court directed a verdict for the claimant.

The administrator of Ellsberry made a motion for new trial, on the general grounds; and by amendment on the grounds, (4) that the court could not direct a verdict, as there was conflict in the evidence; (5) because the title of the claimant to this land was void, because infected with usury; (6) because the court erred in rejecting, when offered in evidence by the administrator of Ellsberry, a receipt for $38.85, on store account, dated December 18, 1890, and given by Cavender & Shahan to B. F. Ellsberry, on which receipt was this entry: "Also $50 to be credited on note of J. W. C.," signed by J. W. Cavender; and in rejecting a receipt dated December 15, 1914, for one bale of cotton of 425 pounds at ten cents per pound, to be credited on note of B. F. Ellsberry, given to the latter by J. W. Cavender; (7) because the court erred in refusing to permit J. P. Shattuck, a witness for the administrator of Ellsberry, to testify that he represented said administrator as attorney at law, that the claimant during his lifetime admitted receiving $100 or more, for which he had given no receipt, and that the claimant said at the time that he did not know whether he paid up the balance for this land or not; claimant objecting to this testimony on the ground that this witness as attorney for said administrator was incompetent to testify to any settlement made by the deceased claimant, which ruling the court sustained and excluded said evidence; (8) because the evidence shows that all of the notes given for the purchase-money of the premises in dispute are barred by the statute of limitations,

and are not enforceable, and can not be enforced by way of filing this claim or otherwise, for the reason that no title ever vested in claimant, on account of the usurious rate of interest charged; (9) because there was no proof before the court that Minnie C. Warrenfells was the duly qualified administratrix of the estate of claimant, and as such entitled to prosecute the claim for the premises in dispute. The court overruled the motion for new trial, and error is assigned on this judgment.

*Norman Shattuck* and *Henry & Jackson,* for plaintiff in error.

*R. M. W. Glenn* and *Rosser & Shaw,* contra.

HINES, J. (After stating the foregoing facts.)

1. It is unnecessary to deal with any of the headnotes except the last.

2. Under the facts, did the court err in directing a verdict for the claimant? J. W. Cavender sold to B. F. Ellsberry the premises in dispute, giving to the purchaser his bond for title, and taking the notes of the purchaser for the purchase-money. The bond for title was conditioned to make to the purchaser the title to the land therein embraced, on payment of these notes given for the purchase-money. The purchaser died. The administrator obtained from the court of ordinary an order authorizing him to sell this land as the property of the purchaser. Thereupon the seller filed his claim to this land. On the trial of the claim the administrator of the purchaser introduced evidence showing various payments on the purchase-money; and he contends that his proof shows the payment of the purchase-money in full, calculating the interest on the purchase-money notes at seven per cent., instead of ten per cent. as called for by these notes. On the other hand, the administratrix of the claimant contends that the purchase-money has not been paid in full by the purchaser, although the evidence introduced in behalf of the claimant shows payments on the purchase-money by the vendee. Under the view which we take of this case, it is unnecessary to determine whether the purchase-money has been paid, and, if not paid in full, what balance is due on the purchase-money.

We think that justice demands that a new trial should be granted. A claim case partakes of the nature of an equitable proceeding. *Williams* v. *Martin,* 7 *Ga.* 377, 380; *Colquitt* v. *Thomas,* 8 *Ga.* 258, 264; *Ford* v. *Holloway,* 112 *Ga.* 851, 852 (38 S. E.

373) ; *Hollinshead* v. *Woodard,* 128 *Ga.* 7, 13 (57 S. E. 79) ; *Douglas* v. *Jenkins,* 146 *Ga.* 341, 343 (91 S. E. 49). When a sale under an execution, or by an administrator under an order of the court of ordinary, is stopped by a claim, the proceeding is converted into a quasi-equitable proceeding, and either the plaintiff in execution, or the administrator, or the claimant can, by way of amendment to the issue thus joined, introduce, in aid of their respective demands, any equitable rights germane to the issue, which is whether or not the property is subject to be sold under the execution or by the administrator under the order of the court of ordinary. *Cox* v. *Cox,* 48 *Ga.* 619, 624; *Hardman* v. *Cooper,* 107 *Ga.* 251 (33 S. E. 73) ; *Ford* v. *Holloway,* supra. It is beyond doubt that under the claim laws equitable rights of the parties can be reached and the pleadings so framed as to give effect to those rights. *Sterling* v. *Arnold,* 54 *Ga.* 690 (5) ; *Shewmake* v. *Johnson,* 57 *Ga.* 75; *Hughes* v. *Clark,* 67 *Ga.* 19, 22; *Green* v. *Mann,* 76 *Ga.* 246; *Ford* v. *Holloway,* supra.

On the trial of this case evidence was introduced, without objection that there were no pleadings to authorize its introduction, tending to establish the rights of the purchaser, and those of the seller. In this state of the pleadings and under the evidence introduced the court should not have directed a verdict for the claimant. The amount due upon the purchase-money should have been ascertained. If there was a balance due upon the purchase-money, it should have been fixed by the verdict; and the verdict and decree should have been so molded as to have the property sold, the balance due on the purchase-money first paid, and the balance of the purchase-money, if any, turned over to the administrator. If it had been found that there was nothing due on the purchase-money, then a verdict should have been rendered in favor of the administrator of the purchaser and against the claim filed by the claimant.

On the next trial the pleadings should be so framed and the allegations on all material points should be so distinctly made that the jury may be able to pass upon the respective rights of the parties; and the verdict and decree so molded as to fully protect and enforce these rights. *Sterling* v. *Arnold,* supra.

*Judgment reversed, with direction. All the Justices concur.*