## CARTER *v.* MOODY.

HINES, J. 1. Claimant alleges that the court erred in refusing a timely written request to charge the following: "I charge you, gentlemen of the jury, that before you could find that the deed from Appling County to Joe Nathan Carter could be set aside, it would be necessary for the plaintiff to tender to the claimant the consideration he paid for same, together with ten per cent. premium thereon, before he (plaintiff) would be entitled to have the same set aside and declared of no effect." There was some evidence from which the jury was authorized to find that a tax execution for $23.90 was levied upon the land in dispute, which was worth $400.00, which was capable of subdivision so that a portion thereof could have been sold to pay the taxes. This being so, the levy was illegal and void because excessive, and the sale was in consequence void. *Stark* v. *Cummings,* 127 *Ga.* 107 (56 S. E. 130); *Williams* v. *Forman,* 158 *Ga.* 89 (5) (123 S. E. 20); *Planters Bank* v. *Georgia Loan & Trust Co.,* 160 *Ga.* 107 (127 S. E. 413). As the plaintiff was proceeding at law to enforce his mortgage execution against the land in dispute, and was not seeking any equitable relief, such as the cancellation of the sheriff's deed made in pursuance of the tax sale, or the deed from the county to the claimant, he was not bound to pay or tender to the claimant the amount paid by the latter to the county for the land in dispute. In *Williams* v. *Forman,* supra, the claimant was proceeding in equity to set aside a void tax sale, and the sheriff's deed made in pursuance thereof. While a statutory claim partakes of an equitable nature, equitable rights can not be asserted and enforced in a claim case without proper pleadings and parties, which can be effected by an amendment in aid of the levy, where the plaintiff in execution is seeking to subject the property to his process on equitable grounds, or by an amendment to the claim, where the claimant is seeking to set up and enforce equitable rights against the plaintiff. *Colquitt* v. *Thomas,* 8 *Ga.* 258; *Myers* v. *Warrenfells,* 153 *Ga.* 648 (3), 653 (113 S. E. 180). What equitable rights the claimant may have against the land or in the proceeds of its sale is not now for decision by this court.

2. The court permitted a witness for the plaintiff, over objection of claimant, to testify that the land in dispute was worth $400.00, and was capable of subdivision into smaller tracts for purpose of levy and sale under the tax fi. fa. Claimant objected to the admission of this testimony, on the ground that it was incumbent upon plaintiff to tender to claimant the amount of money paid by the claimant to the county for this land, before it could be subjected to the plaintiff's execution.

Under the ruling made in the above headnote, this objection was without merit.

3. Claimant alleges that the court erred in charging the jury as follows: "The plaintiff contends that the alleged purchase by Joe Nathan Carter was not a bona fide purchase, claiming that the claimant was a son of the defendant James Carter, and a young boy at the time of the purchase by him from the county, and that the defendant James Carter had continued in possession of the property, and that these circumstances are sufficient to show that there was no bona fide purchase by the claimant Joe Nathan Carter, that the alleged purchase was a fraudulent one, and that the property should be found subject to the execution in favor of J. B. Moody." The assignments of error are, (1) that there was no evidence to support this instruction, and (2) that the instruction was prejudicial and harmful to the claimant. The undisputed facts are these: The claimant was the son of the defendants in execution. At the time he received the conveyance from the county of this land, he was about sixteen and a half years of age. The officer who negotiated for the county the sale to the claimant testified that he thought the claimant paid to the county the amount of money received by the county for this land. The father of the claimant testified that he permitted the son to work for himself and thus earn money, that the son purchased this land from the county with his own funds without his knowledge, that he did not pay the county one cent of the money that the son paid the county for this land, that the first information he had of this fact was the statement of the son to him that the son had bought this land and was the owner of it, and that he rented the land from the son and paid him rent therefor each year since the son acquired the title to it from the county. The defendants in execution have been in possession of the land ever since it was sold for taxes. Claimant did not attend the trial and did not testify as to the facts and circumstances under which he acquired title to this land from the county. Fraud may not be presumed, but, being in itself subtle, slight circumstances may be sufficient to carry conviction of its existence. Civil Code (1910), § 4626. Slight circumstances being sufficient to show fraud, we can not say that under the facts the judge was not authorized to give the above instruction to the jury.

4. Claimant insists that the court erred in charging the jury as follows: "The plaintiff further contends, gentlemen, that the sale of the land was not a valid sale and did not have the effect of passing title out of James Carter, the sale under the tax fi. fa., and that the land is still subject to the execution in favor of the plaintiff, J. B. Moody, notwithstanding the sale to the county for the taxes, for the reason claimed by the plaintiff that the levy was excessive. The plaintiff claims that the land was susceptible of division, and that a smaller portion could have been levied upon, an amount sufficient to bring the taxes, without injury to the land, and that to levy upon the entire tract of forty acres and sell for the amount of taxes claimed to have been due was an excessive levy, and therefore was invalid and void, and did not have the effect of passing title out of James Carter, or of relieving the lien of his mortgage, as claimed by the plaintiff, and

that for this reason the property should be found subject to his fi. fa., and that the claim of claimant should not be sustained." The errors assigned are, (1) that the evidence did not authorize this instruction; and (2) that before the question of excessive levy could be submitted to the jury it was necessary for the plaintiff to tender to the claimant the consideration paid by him for the deed to the county, together with ten per cent. premium, which plaintiff had not tendered. There was some evidence to authorize this instruction; and under the ruling in the first headnote the second assignment of error is without merit.

5. There was evidence to support the verdict.

<em>Judgment affirmed. All the Justices concur.</em>

No. 4967. August 14, 1925.

Claim. Before Judge Highsmith. Appling superior court. April 30, 1925.

On December 14, 1908, Mamie Carter and J. M. Carter executed a mortgage to J. B. Moody upon a described tract of land, containing forty acres, more or less. This mortgage was foreclosed in Appling superior court in 1923. The execution which was issued upon the judgment of foreclosure was levied upon this land. Thereupon Joe Nathan Carter filed his claim thereto. The claimant asserted title under a tax sale. On December 20, 1920, a tax execution for $23.90 was issued against J. M. Carter for his State and county taxes of that year. On September 7, 1921, this tax execution was levied upon this land, and on the first Tuesday in October, 1921, after being advertised, the land was put up and exposed for sale, when it was bid in by the County of Appling. The sheriff executed his deed thereto to the county. On October 3, 1922, the county, in consideration of the sum of $40.44, conveyed this land to the claimant. On the trial the plaintiff introduced the original mortgage execution and entry of levy thereon, and the original mortgage. The plaintiff testified that the mortgagors told him that they were in possession of this land at the time of the execution of the mortgage.

Claimant introduced the tax execution of 1920, the levy thereof upon the land in dispute, the sheriff's deed to the County of Appling, and the deed from the County of Appling to claimant. J. L. W. Baxley, for the claimant, testified that he was clerk of the commissioners of roads and revenues of Appling County for 1922. He was present at the sale of this land when sold under tax execution. No one made any bid thereon, and it was bid in by the county. The sheriff's deed to the county was in his office

until the county conveyed this land to claimant. The consideration mentioned in the deed from the county to claimant was paid to him for the county. He thinks it was paid to him by claimant. He does not consider that the land is worth much money. The county was glad to get the money for it and glad to make the deed. Had not seen the land recently. It was off from the public road about a mile and surrounded by farms owned by negroes. It was not valuable. It was sandy and grown over with blackjack oaks. It was poor land. It had very little market value. Would not give more for it than the consideration expressed in the deed from the county to claimant. Does not know whether the land is capable of division or not so as to sell a smaller part for taxes.

James Carter, for the claimant, testified he and his wife made the mortgage to Moody. We were not living on the land at the time but had a small field in cultivation, under fence. Negroes own land on all sides of the land in dispute. It is poor land, and the houses are poor and nearly rotten down, and it was not worth over $1 or $2 an acre. He bought it in 1901 for $40 from Ed Carter. Times were hard in 1922, and land was worth hardly anything; this land was not worth on the market more than the taxes and costs, and the same was true in 1920 and 1921. He could not pay the taxes on it, and it was sold for the taxes. His boy Joe Nathan Carter was working for himself, took his own money, and came here and bought it from the county and paid for it. Claimant is about 19 years old. He is in Florida. Wrote him to come to this court, but had not heard from him. Am living on this land and paying him rent for it every year. Claimant has a job in Florida. I did not pay a cent of the consideration paid the county. Claimant worked for the money and bought the land. I was in the hospital, and not able to work. I did not know he had bought the land until he showed me the deed and told me that I had no land but that it was his. He worked away from home to make the money. He worked by my permission. Claimant paid the recording fee for the deed to the county and also from the county to him. He did not record them until his lawyer told him to have them recorded. The land can not be cut into pieces and sold so that anybody could have a road to the part sold off.

E. J. Yeomans, for the plaintiff, testified: Used to be a real estate agent in Appling County, and tried to sell land in the county. I know the land where Jim Carter now lives. I consider it worth $400. It is capable of being divided into smaller tracts, and·part of the same should have brought the amount due for taxes. Did not think any land in Appling County worth less than $5 per acre. This land is surrounded by negro farmers, and is a mile from the public road. It has blackjack oaks on it. The turpentine timber is not worth anything. The land is sandy, and J. M. Carter makes poor crops on it. The house is only a negro shack.

The jury returned a verdict finding the land subject to the mortgage execution. Claimant moved for a new trial on the general grounds, and on some special grounds. The court overruled the motion, and the claimant excepted.

*H. J. Lawrence*, for plaintiff in error. *J. B. Moore*, contra.